[S. F. No. 493.   Department One.—January 20, 1898.]

JOSEPH KENNEDY, Appellant, v. JAMES B. CHASE et al., Respondents.

NEGLIGENCE—CORRESPONDING DUTY—INJURY TO PLAINTIFF—NONLIABILITY OF DEFENDANTS—NONSUIT.—There can be no negligence, without the existence of a corresponding duty upon the part of the persons against whom the negligence is charged; and there can be no liability of defendants for an injury to the plaintiff where, under the circumstances shown, it is clear that defendants were under no legal duty or obligation to protect plaintiff from the injury he received; and, where the evidence for the plaintiff discloses that no such duty existed, the plaintiff is properly nonsuited for want of proof of negligence of the defendants.

ID.—MASTER AND SERVANT—SAFE PLACE FOR WORK—EXTENT OF DUTY OF MASTER—PRIVATE EXCURSION OF SERVANT.—The duty of a master to furnish his servant with a reasonably safe place in which to work is limited to the premises where the employee is required to be for the purposes of his employment, and does not extend to his protection while upon private excursions outside of those limits, taken solely upon his own account.

ID.—EMPLOYMENT OF SERVANT UPON LIGHTER—PRIVATE EXCURSION TO VESSEL—INJURY IN HATCHWAY—NONLIABILITY OF MASTER.—Where the servant's place of employment was upon a lighter, from which a vessel was being loaded, and his work consisted in shoveling ballast from the deck of the lighter onto a staging erected outside of the vessel, and the servant made a private excursion upon the deck of the vessel, upon his own account and for his own convenience, to place his coat upon a main hatchway unnecessarily remote from the place of his employment, and, upon resuming his coat after quitting work, fell into a smaller hatchway on the deck which was outside the limits of his employment, and was injured by the fall, the master owed no duty to protect him against such injury, and cannot be held liable therefor.

ID.—VOLUNTARY ENTRY UPON VESSEL OUT OF SCOPE OF EMPLOYMENT—LICENSEE AT SUFFERANCE—NONLIABILITY OF OWNERS OF VESSEL.—The plaintiff, in going about upon the vessel without the permission or invitation of the owners or master thereof, and outside the scope of his employment in loading the vessel, was a mere licensee at sufferance, and the owners of the vessel owed no duty to protect him against injury in a part of the vessel where he was neither invited nor expected to go; but the extent of the liability assumed by the owners of the vessel was that their decks should be reasonably safe where the plaintiff was required by his employment to traverse them, and not elsewhere.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   A. A. Sanderson, Judge.

The facts are stated in the opinion of the court.

Reddy, Campbell & Metson, for Appellant.

Joseph Mee, and R. Percy Wright, for Respondent James B. Chase.

T. M. Osmont, for Respondents George Plummer and Others, Owners of the Ship "John A. Briggs."

VAN FLEET, J.—Appeal by plaintiff from a judgment of nonsuit.   The complaint alleged that plaintiff was employed by defendants as a stevedore to assist in placing ballast in the ship "John A. Briggs"; that defendants negligently and carelessly left open and unguarded a certain trimming hatch, in a dark and dangerous place on the freight deck of said ship, where plaintiff, "in performing his duties as such stevedore, and in the course of his employment, was compelled to go"; that plaintiff, while in the performance of his duties, fell through said hatchway and suffered the injury complained of.   It was alleged that the defendant Chase, was a master stevedore, and that the other defendants were the owners of the vessel.

The evidence, an understanding of which will be facilitated by reference to the accompanying diagram, tended to show these facts:

The defendant Chase was employed as master stevedore to put ballast in the after part of the ship mentioned, which was lying at the wharf in the port of San Francisco, and was engaged in that task. The work was being accomplished by bringing the ballast material on a lighter alongside the vessel, to the point marked "port hole," shoveling it from the lighter onto a staging erected on the outside of the ship, between the lighter deck and the port hole, and from thence through the port hole onto the freight deck, where it was taken and dropped through the hatchways into the hold of the ship. On the day in question plaintiff was employed by the foreman of defendant Chase, as a laborer, to assist in putting in the ballast, his work being confined to the lighter, and consisting (in company with several fellow laborers) in shoveling ballast from the deck of the lighter onto the staging.

The mode of ingress and egress for the men to and from their work was by means of a plank from the dock to the main deck; by a ladder down the "after hatch," as shown on the diagram, to the freight deck, and thence, for those working on the lighter and staging, from the after hatch through the port hole.

Plaintiff went to work about 1 o'clock in the afternoon. On reaching the freight deck, instead of going direct to the port hole, he, without direction or request from anyone, walked forward to the point marked "main hatch," and left his coat on the coaming of that hatch, at "Y"; on quitting work at 6 o'clock in the evening plaintiff returned through the port hole, went again to the main hatch, secured his coat and started, as he testified, by a direct course from that point to the ladder at the after hatch to go ashore, but on his way, in some manner not made entirely clear, managed to walk into the trimming hatch, marked "A," fell through into the hold and was injured.

When plaintiff went to work it was light between decks, but

at the hour of quitting it was quite dark, but for the light afforded by a couple of candles; and as to the sufficiency of this to enable one to see his way clearly there is some conflict—several of the men who were preparing at the time to leave the vessel testifying that they could see the hatchway through which plaintiff fell, and warned plaintiff to look out for it, but plaintiff testifying that he could not see it, and heard no warning until he was falling. It did appear, however, without conflict that there was a candle held near the after hatch to light the way out.

The trimming hatch in question, like the others of its kind shown on the diagram, was a small hatchway used for putting in and trimming ballast; it was flush with the deck, without coaming, and had, like the others, been open all the afternoon, although it had not been used that day, as a part of the cargo of coal which yet remained in the forward part of the hold lay too near it; for this reason the ballast put in that afternoon had been put through hatches "B" and "D" only.

In substantial effect this was the showing made by plaintiff's evidence. It may be added that there was some slight discrepancy between the testimony of the plaintiff and that of his other witnesses as to the correctness of the diagram referred to, particularly as to the location of the port hole at which the lighter lay—the plaintiff being inclined to locate it about equidistant between the main and after hatches; but, if the fact be material, his testimony shows such uncertainty and apparent confusion in this, and one or two other respects relative to the situation of physical objects on the deck, and is so entirely overborne by the testimony of all his other witnesses on the subject, that it may be said to appear without substantial conflict that the diagram correctly shows, approximately, the relative positions of the various objects designated thereon, including the port hole.

This evidence shows no negligence on the part of defendants, and the nonsuit was properly granted on that ground. There cannot be neglect without the existence of a corresponding duty, and under the circumstances shown it is clear that defendants were under no legal duty or obligation to protect plaintiff from the injury he received. While an employer is required to furnish his servant with a reasonably safe place in which to work, this duty is limited to the premises where the employee is re-

quired, for the purposes of his employment, to be; it does not extend to his protection while upon private excursions outside of those limits, taken solely on his own account. Plaintiff's work was upon the lighter, and it may be conceded that he had a right of safe ingress thereto and egress therefrom; but in going forward to the main hatch plaintiff was not within the reasonable exercise of any right which he had on board the ship by reason of his employment. Conceding his privilege, as incident to his employment, to remove and deposit his coat while working, and to be protected while in the reasonable exercise of such right, it was neither reasonable nor necessary to select for the purpose a point so remote from his work. He had as well chosen to hang his coat in the rigging, or at the yard arm. No reason appears why he could not, like others of his fellow laborers, have laid the garment on the lighter, or in some place more convenient to the place of his employment, or the point of departure from the ship. His duty required him to leave the ship by as direct a route as practicable; he had no general right on board, but solely a right for the purposes of his special employment. In going where he did he not only went entirely out of his way, but was in pursuit of an object relating solely to his own personal convenience; and while, perhaps, not in strictness a trespasser, he was at best but a mere licensee at sufferance, to whom the defendants at the time owed no duty.

An employee who leaves that portion of his master's premises where his duties require him to be, and goes about to his own convenience, becomes a licensee. ( *Wright v. Rawson,* 52 Iowa, 329; 35 Am. Rep. 275; *Pfeiffer v. Ringler,* 12 Daly, 437.) The same doctrine is recognized in *Kauffman v. Maier,* 94 Cal. 269, 278.

It is conceded that the evidence does not show any employment of plaintiff by the owners of the vessel, but it is claimed that, plaintiff being lawfully upon the ship, it was the duty of the owners, for a neglect of which they are responsible, not to leave unguarded holes upon the deck—upon the principle that the owner of premises is responsible to one coming thereon, by his invitation, for injury occasioned by their unsafe condition, and from a cause which could have been avoided by reasonable care.

CXIX. CAL.—41

But this principle, like that governing the responsibility of an employer, has its limitations. The duty of the owner in such a case has relation to the object for which the right of entry is extended, and is limited to responsibility for the condition of that portion of the premises required for the purposes of the visit; it does not impose liability for the want of safety at a point without those limits, and where the injured party was neither invited nor expected to go. (1 Thompson on Negligence, c. 7, p. 308; *Zoebisch v. Tarbell,* 10 Allen, 385; 87 Am. Dec. 660; *Murray v. McLean,* 57 Ill. 378; *Schmidt v. Bauer,* 80 Cal. 565.)

When the defendant owners permitted the plaintiff to go aboard the ship for a specific purpose, they did not give him the right, by implication or otherwise, to roam at will over their vessel for his own purposes. They undertook that their decks should be reasonably safe where plaintiff was required by his employment to traverse them, but not elsewhere.

"We have found no support for any rule," says Mr. Thompson, in speaking of the rights of trespassers or mere licensees, "which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or their relations with the occupant." (1 Thompson on Negligence, 303. See, also, *Redigan v. Boston etc. R. R. Co.,* 155 Mass. 44, 47; 31 Am. St. Rep. 520, and cases there cited.)

The circumstances clearly distinguish this case from those relied upon by appellant. In all those cases it will be found that the injury was received while the party was engaged in the performance of his work, or in a place where he had a right at the time for the purposes of his employment to be.

Judgment affirmed.

Harrison, J., and Beatty, C. J., concurred.

Hearing in Bank denied.