ELLSWORTH v. METHENEY.

(Circuit Court of Appeals, Sixth Circuit. October 2, 1900.)

No. 814.

1. MASTER AND SERVANT—RELATIONS OF PARTIES—INJURY OF SERVANT WHEN NOT IN LINE OF DUTY.

A coal miner who, during the noon hour, while not engaged in work, goes to a different part of the mine, for the purpose of visiting with another miner, is not, while so absent, engaged in the line of his duty, so as to impose upon the employer the duty of a master to see that the entry through which he passes from and to the part of the mine where he is employed is kept in a safe condition for his passage.

2. NEGLIGENCE—UNSAFE PREMISES—INJURY OF LICENSEE.

Where the miners in a coal mine, with the knowledge and implied consent of the owner, are accustomed to use the passages or entries in the mine as a place for congregating or passing to and fro during the hours of recreation, it is negligence in the owner to introduce and extend along such an entry an electric wire which is dangerous to the life of those who come in contact therewith, without properly insulating or inclosing the same, or giving notice of the danger to those who, he should reasonably apprehend, are likely to be brought in contact with it, and such negligence will render him liable for the death of a miner who, in the accustomed use of the premises, and without knowledge of the danger or negligence on his own part, is killed by coming in contact with such wire.

In Error to the Circuit Court of the United States for the Eastern Division of the Southern District of Ohio.

Fred L. Rosemond, for plaintiff in error.
Robert T. Scott, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. This action, brought in the state court, and thence removed to the circuit court of the United States, seeks the recovery of damages by the administratrix of John Metheney, deceased, against James W. Ellsworth, an operator of a certain coal mine in which, on or about the 7th day of October, 1896, John Metheney came to his death. Metheney had been for some time employed as a coal miner in one of the mines of plaintiff in error, and, so far as ordinary coal mining is concerned, was a man of sufficient experience to undertake such work. Some three weeks before the

death of Metheney an electrical mining apparatus was placed in the mine in which Metheney was at work, consisting of certain drilling machines connected by wire, and an electrical plant for the operation thereof. After the connecting wire reached the mine, it was strung along brackets set in the wall of the entry, and which stood out a few inches therefrom. While walking along the entry, and near this wire, Metheney came in contact therewith, and almost instantly died. There is contention in the case as to whether his death was due to heart disease, with which he is shown to have been afflicted, or the electrical shock resulting from contact with the wire. The theory of the plaintiff's case was that the wire was improperly insulated, and consequently, when charged with electricity, highly dangerous; that Metheney was a man without experience in the use of electricity; that the entry was dark, or, at least, not well lighted, and under such circumstances Metheney was entitled to notice of the great danger involved in coming into contact with the wire; that the employer was guilty of negligence in thus placing the wire in the mine without adequate insulation or notice to the employés. On the part of the plaintiff in error it was claimed that the mechanism was purchased from a dealer in good repute; that the negligence, if any, was that of a third person, for which plaintiff in error was not responsible; that ordinary care had been used in providing the mechanism; that decedent came to his death by his own contributory negligence, and at a place where he was not required to be in the discharge of his duty as an employé. On this branch of the case there seems to be no conflict of testimony. At least, it is well established that Metheney, at the time of receiving the injury, had left the part of the mine in which he was employed, it being during the noon hour, and proceeded to the room of a fellow workman, and, after some talk with him concerning some of the mining operations, was returning to his room, when, after stopping on two occasions to pick slate from the roof, at the same time calling the attention of a fellow workman to its condition, came in contact with the wire, exactly how is not shown. It thus appears that when the injury was received Metheney was not acting in the course of his employment or performing the duties for which he was engaged. It is equally clear that he voluntarily left the part of the mine in which he was at work, and, after the talk with the fellow miner above referred to, was returning to his room. The court held that the workmen had a right to the use of the passageway during the noon hour, and submitted the case to the jury upon the theory that the deceased came to his death while acting within the scope of his employment. In this view instructions were given to the jury as to the duty of the employer to provide a safe place for his workmen, and the obligation of the servant to observe care upon his part. It was contended by the plaintiff in error at the trial that Metheney was injured outside of the course of his employment. The court, holding the view above indicated, disposed of this proposition by instructing the jury as follows:

"It is claimed, in the second place, that if the death was caused by the current escaping from the wire through the insufficiency of the insulation, yet

the death was not due to the negligence of the defendant, but the negligence of deceased himself—First, because he was not in the line of his duty,—in other words. if he had been where he ought to have been, he would not have been hurt; and, second, that he was picking loose slate from the roof of the entry, and, the suggestion is, slipped and fell against the wire; and that in either case it was his own negligence that caused his death, and not the negligence of the defendant. I do not agree with the view of counsel for the defendant upon these points. The view I take of the law is this: That the men in the mine had a right to the use of this entry as a passageway to and from their work, and while they were going to their work or from their work they were as much in the line of their duty as when they were actually mining coal, and that during the noon hour, a time set apart, not only for the men to eat their dinners. but for rest from labor, they had a right, in the enjoyment of that time of rest, to go out into the open air, or into the room of some friend adjoining, and that, in going or returning to their rooms to resume work, they were in the line of duty within the meaning of the law, and that it was not contributory negligence upon the part of the plaintiff to visit Unklebay in his room during that hour, or to pick the slate from the roof while returning from Unklebay's room; that the mere fact that he stopped for a moment to pick slate from the roof would not be such an interruption of his return to labor as would take him out of the line of duty, and deprive him of the protection afforded him while in the line of duty. It would be, in my judgment, an unreasonable limitation upon the right to rest from labor during the noon hour, if the man should be confined to the one spot where his hours of labor are spent. So that you can dismiss from your consideration the claim that he was guilty of contributory negligence because he had left his own room on his visit to Unklebay, or because he stopped in returning from Unklebay's room to his own to pick a piece of loose slate from the roof."

In other words, the learned judge was of the opinion that when the decedent was injured, under the circumstances above outlined, he was in the discharge of his duty in the course of his employment, and he treated the case as though Metheney had been killed in the part of the mine where he was necessarily employed in the discharge of his duties; and this view was given to the jury as a matter of law, and they were practically told to dismiss from consideration any defense based upon the claim that the decedent was not killed in the performance of the duties of his employment. We cannot concur in this view. No authority has been cited in support of it, and it is opposed to well-considered cases. Wright v. Rawson, 52 Iowa, 329, 3 N. W. 106; Kennedy v. Chase, 119 Cal. 637, 52 Pac. 33; 1 Shear. & R. Neg. § 190. It is to be borne in mind in this connection that Metheney was not going from, or coming to, his work. He was not engaged in the business of his employer at the time of the injury, but came to his death during the noon hour, while returning from a visit undertaken, upon his own volition, outside the part of the mine in which he was employed.

While we think there was error in treating the case as one turning upon the duty owing by the employer to the employé injured in the course of his duty, we think there is an aspect of the case which might properly have been submitted to the jury. There was testimony tending to show that the entry in which Metheney was killed was a place where the miners were accustomed to go at noon for the purpose of eating their dinners and for social intercourse; that this had been the practice in the mine, with the knowledge and without objection from the owner. In such a case, what is the measure of obli-

gation on the part of the employer, and in what relation to him does the employé stand? Certainly not as a mere stranger, to whom no duty is owing. It is shown to be customary to use the entry as a place where the men come from their rooms during the short time of refreshment and rest permitted to them in the course of the day's labor. The master, knowing that the entry was so used, and not objecting thereto, impliedly licenses the men to use the place in this manner. The testimony tended to show that the electric wire, in the condition which it was permitted to be, was highly dangerous to life. The entry in which the men congregated had thus introduced into it an apparatus dangerous to life, but partially disclosed in the darkness of the mine, and strung along the wall, set out therefrom, so that the men using the entry might come into contact therewith. Admitting that, while not engaged in the course of his employment, Metheney was not entitled to the protection of an employé, he was, nevertheless, a licensee using the entry with the implied consent of the employer. Under such circumstances, we do not think the employer can be permitted without responsibility to introduce a highly dangerous apparatus into a place thus used with his consent. We think the case in this particular is ruled by the principles laid down by this court in the case of Felton v. Aubrey, 20 C. C. A. 436, 74 Fed. 350. In that case Judge Lurton, giving the opinion, quotes the following language from Bennett v. Railroad Co., 102 U. S. 577, 26 L. Ed. 235:

"That the owner or occupant of land, who, by invitation, expressed or implied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons, they using due care, for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him, and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation."

And the judge goes on to say:

"It seems to us that many of the American cases which we have cited failed to draw the proper distinction between the liability of an owner of premises to persons who sustain injuries as a result of the mere condition of the premises, and those who come to harm by reason of subsequent conduct of the licensor inconsistent with the safety of persons permitted to go upon the premises, and whom he was bound to anticipate might avail themselves of his license. This distinction seems to be sharply emphasized in the case of Corby v. Hill, 4 C. B. (N. S.) 562, and is a distinction which should not be overlooked. If there be any substantial difference between the legal consequence of permitting another to use one's premises and inviting or inducing such use, the distinction lies in the difference between active and the merely passive conduct of such a proprietor. It may be entirely consistent with sound morals and proper regard for the rights of others that the owner of the premises should not be held liable to one who goes upon another's premises for his own uses, and sustains some injury by reason of the unfitness of the premises for such uses, not subsequently brought about by the active interference of the owner. If such person goes there by mere sufferance or naked license, it would seem reasonable that he should pick his way, and accept the grace, subject to the risks which pertain to the situation. But, on the other hand, if, with knowledge that such person will avail himself of the license, the owner actively change the situation by digging a pitfall, or opening a ditch, or obstructing dangerously the premises which he has reason to believe

will be traversed by his licensee, sound morals would seem to demand that he should give reasonable warning of the danger to be encountered."

Applying the doctrine herein stated to the facts developed in the present case, we do not perceive why the owner of the mine who actually changes the situation of previous safety by introducing an electric wire insufficiently insulated to prevent injury to those who may come in contact therewith, in a place where he knows or has the means of knowing that the workmen are likely to congregate, is not equally liable with the owner of premises who may "actively change the situation by digging a pitfall, or opening a ditch, or obstructing dangerously the premises which he has reason to believe will be traversed by his licensee." In the case at bar, as well as in the one put by Judge Lurton, we are of opinion that sound morals and just treatment demand that the licensee shall have notice of the new danger which he is likely to encounter in using the premises. In taking this view of the case, we are not undertaking to determine that the facts warrant a recovery on the line herein indicated. That is a question to be developed by testimony upon issue joined with proof directed to a case based upon this theory. Enough is shown to warrant an expression of these conclusions in view of a retrial of the case. What we intend to hold is that if the testimony shall warrant the finding that the electrical apparatus as actually introduced into the mine was dangerous to the life and safety of the employés, and they were ignorant of the dangers thereof, or could not know them in the exercise of ordinary care to avoid injury, and the same was placed in a part of the mine which the men were accustomed to use and occupy during the hour of rest and refreshment when not actively engaged in their duties, with the knowledge and consent of their employer, a duty is imposed upon the employer, in thus introducing into his mine a new and dangerous element, to properly guard and protect the same, or to give notice of the danger to those whom he should reasonably apprehend are likely to be brought into contact therewith. For the error in treating the case as one where an injury happened to one in the course of his employment, and charging the jury upon that theory, the case will be reversed and remanded, for further proceedings consistent with the views herein expressed.