[S. F. No. 7105.   Department One.—June 14, 1917.]

## EVELYN JACOBSON, Appellant, v. NORTHWESTERN PACIFIC RAILROAD COMPANY (a Corporation), Respondent.

NEGLIGENCE—DEATH FROM CONTACT WITH ELECTRIC WIRE—EVIDENCE— DIRECTED VERDICT FOR EMPLOYER.—In an action for damages for the death of a person employed in assisting in installing an extension of a runway on an electric power-house of the defendant, a directed verdict in favor of the defendant at the close of the evidence is proper, where it is established by the evidence that the deceased met his death in going upon a platform, upon which highly charged electric wires were installed, in disregard of instructions, for his own convenience and without invitation, and that there was no occasion to go thereupon in the performance of the work.

ID.—ACTION FOR NEGLIGENCE—ESSENTIALS.—To warrant the maintenance of an action by one for an injury due to negligence, there must exist some obligation toward the plaintiff which defendant has left undischarged.

ID.—DIRECTED VERDICT—WHEN PROPER.—While ordinarily the question of negligence is one of fact to be determined by the jury, nevertheless where the undisputed evidence is such that only one inference can be drawn therefrom, or it is of a character so conclusive the court should, in the exercise of its discretion, set aside a verdict not in accord therewith, the question is one of law which warrants the court in directing a proper verdict.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

M. T. Moses, for Appellant.

Jesse W. Lilienthal, Albert Raymond, and Stanley Moore, for Respondent.

VICTOR E. SHAW, J., *pro tem.*—Plaintiff, as the widow and sole heir of John A. Jacobson, deceased, brought this action to recover damages for the death of her husband, alleged to have been caused by the negligence of defendant.

At the close of the evidence the jury, upon direction of the court so to do, rendered a verdict in favor of defendant, in accordance with which judgment was entered.

The appeal is from an order of court denying plaintiff's motion for a new trial.

The facts admitted by the pleadings and established by the evidence are as follows: Defendant owned a railroad in connection with which it maintained a power-house at San Anselmo, where it received electric energy used in the conduct of its business and the operation of its road. At the time in question this power-house was some eighty feet long, extending east and west, and thirty-two feet wide. Across the rear or east end thereof and some thirteen feet above the floor was a platform joining the rear wall and extending out therefrom twelve feet and six inches. On this platform, and located two feet from the rear wall and parallel therewith, the defendant had installed three high-tension oil-sets. The space between the outer line of these sets and the front edge of said platform was some seven and one-half feet. Back of each oil-set was a window through which, at a height of five feet above the platform, a high-tension wire for conveying electric current entered, and, crossing over the two-foot space, extended down into said oil-sets. Except for a small wooden rod extending horizontally from each oil-set to the edge of the platform, and two feet above the floor thereof, the seven and one-half foot space in front of the oil-sets was free and unobstructed. On each side of the interior of the house, eighteen feet above the floor and within a few inches of the walls, was a runway consisting of a twenty-four inch "I" beam, upon which small rails had been secured for operating a crane. This runway, supported by iron posts or columns, extended from a point in line with the outer edge of said platform at the rear or east end of the building a distance toward the front of some forty feet. At the end of the runway on the south side of the building and next to the platform the iron post used as a supporting column for the beam was provided with projecting spikes of iron as steps for a ladder, thus affording a means of reaching the platform. Defendant, desiring to extend the runway, upon which to operate the crane, from the point where it ended, forty feet from the platform, to the front of the building, let a contract therefor to the Pacific Rolling Mills Company, which em-

ployed one Frederick A. Schauer as contractor to install the same. Among the men employed to do the work by Schauer was John A. Jacobson, the husband of plaintiff herein, who, with others, commenced the work of installation on January 9, 1912. On the morning of January 11th, Jacobson, under direction of the foreman, was engaged on the runway on the north side of the building tightening the clips used to hold the rails on the beam. Another employee, Anderson, was doing like work on the south runway. In reaching their work they used an ordinary movable wooden ladder, the position of which was near the front of the building. About half an hour before the accident Jacobson was noticed at work adjusting the clips on the rail on the old runway, which it seems had been loosened in installing the extension or new runway. At this time he was at work about fourteen feet from the end of the runway at the platform. Later his groans attracted the attention of Anderson, the employee working on the opposite side, who upon looking up saw Jacobson standing immediately back of the middle oil-set in the two-foot space between the row of oil-sets and the rear wall of the building, his arm being against the high-tension wire which extended down into the oil-set. At about the same time Jacobson raised his head touching a wire extending through the window five feet above the platform, as a result of which he received the injury which caused his death.

It clearly appears that the platform was wholly disconnected with the work required in installing the extension of the runway, and that in performing the contract no occasion existed for any of the employees going thereon; that on the morning of January 9th, after the work had commenced, Mr. Hatch, defendants' superintendent, in conversation with the contractor's foreman, said to him: "That stuff up there [referring to the platform] you want to keep away from all the time"; and that Mr. Govann, the operator at the powerhouse, in a conversation had prior to the accident with the contractor's foreman, emphasized the fact that they should keep off the platform because it was a fifty thousand volt transmission and would kill a person within a radius of four feet, admittedly an exaggeration, but well calculated to warn the employees of its dangerous character. It further appears that prior to his completion of his task of adjusting the rail clips, Jacobson, actuated solely by curiosity or for his own

convenience, and in the absence of any means provided for reaching the platform from the end of the runway upon which he was working, jumped or climbed therefrom to the front of the platform, and, as shown by his footprints in the dust, went in the narrow space immediately back of the middle oil-set, where his arm came in contact with the descending wire, as a result of which he was electrocuted.

Not only was deceased, through his employer's foreman, warned by defendant to keep away from the platform upon which were installed wires through which approximately fifty thousand volts of electricity were conducted, but neither in the installation of the extension of the runway for which his employer was the contractor nor in the performance of duties imposed upon him as such employee was there any occasion for his going upon the platform. As showing a want of warning, appellant directs our attention to the fact that, when the contractor and his foreman came to the power-house on Sunday before the Tuesday on which they began the work, one Galloway, employed by defendant as electrician and who at the time happened to be there, told them that on Saturdays and Sundays the plant was operated all day and that on week days it ran between the hours of 6 and 10 A. M. and 4 and 8 P. M., and that when in operation all the wires were hot, but there would not be any wires in operation *back there* where they were going to do the work except a six hundred volt cable which came in. It is not shown that Galloway's position as an employee authorized him to bind defendant by the giving of warnings or advice in connection with work at the power-house, which in fact was in charge of Hatch and Govann. "A master is not responsible for the consequences of the bad advice given by a servant whose duties do not include the giving of advice and counsel generally." (*Keating* v. *Michigan Cent. R. R. Co.,* 97 Mich. 154, [37 Am. St. Rep. 328, 56 N. W. 346]; *Lackat* v. *Lutz,* 94 Ky. 287, [22 S. W. 218]; *Hall* v. *Poole,* 94 Md. 171, [50 Atl. 703].) Moreover, the advice given by Galloway, if in so doing he be deemed to have acted within the scope of his employment, referred not to the conditions where the high-tension transmission wires were installed on the platform, but to conditions existing in that part of the building where the work was to be done. Added to all of which is the warning given by both Hatch

and Govann at the time when the work was actually commenced.

As heretofore stated, the iron column supporting the end of the runway next to the platform was constructed as a ladder for use in reaching the platform. Appellant insists that its maintenance was an implied invitation to deceased to use the column so provided with the spike steps in reaching the ground rather than retrace his steps over the runway to the movable wooden ladder used in reaching the place of work. This permanent ladder, from its nature erected for the sole and specific purpose of enabling defendant's employees to reach the platform where deceased was told he should not go, could not be deemed an implied invitation for him to climb or jump down from the runway on which he was working and go through a danger zone two feet in width for a distance of thirty-two feet in order to gain the ground, even though that was his object, as to which the record is silent.

To warrant the maintenance of an action by one for an injury due to negligence there must exist some obligation toward the plaintiff which defendant has left undischarged. (*Schmidt* v. *Bauer*, 80 Cal. 565, [5 L. R. A. 580, 22 Pac. 256].) In the case at bar, no facts appear which tend to show any obligation of defendant to deceased which it failed to discharge. Indeed, the testimony of the contractor's foreman to the effect that in the course of the work of installing the runway they had no occasion to go upon or use the platform and that Jacobson's act in going upon it was not due to any order expressly given, nor to anything connected with the work in which he was engaged in doing, is not controverted. Having, as stated, for his own convenience and without invitation on the part of the defendant, intruded upon a place of danger in which position as to defendant he was, if not a trespasser, at least a licensee as to whom defendant owed no duty for the violation of which it is liable, the injury suffered must be deemed to have resulted solely from his own negligence. As said in *Kennedy* v. *Chase*, 119 Cal. 637, [63 Am. St. Rep. 153, 52 Pac. 33]: "We have found no support for any rule (speaking of licensees and trespassers) which would protect those who go where they are not invited, but merely with express or tacit permission, from curiosity or motives of private convenience, in no way connected with business or their relations with the occupant." To the same

effect are *Means* v. *Southern California Ry. Co.,* 144 Cal. 473, [1 Ann. Cas. 206, 77 Pac. 1001], *Belford* v. *Canada Shipping Co.,* 35 Hun (N. Y.), 347, *Zoebisch* v. *Tarbell,* 92 Mass. (10 Allen) 385, [87 Am. Dec. 660], and Thompson on Negligence, sec. 946.

While ordinarily the question of negligence is one of fact to be determined by the jury, nevertheless where the undisputed evidence is such that only one inference can be drawn therefrom, or it is of a character so conclusive that the court should in the exercise of its discretion set aside a verdict not in accord therewith, the question is one of law which warrants the court in directing a proper verdict. (*Davis* v. *California St. Ry. Co.,* 105 Cal. 131, [38 Pac. 647]; *Delaware etc. R. R. Co.* v. *Converse,* 139 U. S. 469, [35 L. Ed. 213, 11 Sup. Ct. Rep. 569].)   In *Estate of Baldwin,* 162 Cal. 471, [123 Pac. 267], it is said: ''A directed verdict is proper, unless there be substantial evidence tending to prove in favor of plaintiff all the controverted facts necessary to establish his case.   In other words, a directed verdict is proper whenever, upon the whole evidence, the judge would be compelled to set a contrary verdict aside as unsupported by the evidence.   To warrant a court in directing a verdict, it is not necessary that there should be an absence of conflict in the evidence, but, to deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one.''   Applying this rule to the facts narrated, we entertain no doubt as to the correctness of the action of the court in directing a verdict for defendant.

The order appealed from is affirmed.

Sloss, J., and Shaw, J., concurred.

Hearing in Bank denied.