[Civ. No. 20878.   Second Dist., Div. Two.   June 14, 1955.]

MARY JESSIE POWELL, Appellant, v. A. Q. JONES et al., Respondents.

Herlihy & Herlihy for Appellant.

Moss, Lyon & Dunn, Robert C. Nye and Henry F. Walker for Respondents.

FOX, J.—Plaintiff appeals from a judgment of nonsuit in an action in which she sought to recover damages for personal injuries allegedly caused by defendants' negligence.

The facts developed at the trial have been embodied in a settled statement. We have extracted therefrom those portions pertinent to the determination of the propriety of the nonsuit. As thus edited, and with emphasis' supplied in all cases, the facts recited are as follows:

"Mary Jessie Powell, the plaintiff . . . herein, was taken to the house of Mr. and Mrs. A. Q. Jones on August 21, 1952, in the afternoon, by Mrs. Jones to act as a 'baby sitter.' She was to be paid for these services. The premises . . . were two houses which had been joined sometime in the year 1950 by Mr. and Mrs. Jones and constituted their residence.

"Mrs. Powell's son lived in a house about fifty feet up the street, and it was plaintiff's custom after remaining at the Jones home for the night to go up and have breakfast with her son, who in turn would drive her to her own home in the morning. On the day in question, her son was ill, and she made arrangements with Mrs. Jones to obtain a ride to her home in the morning.

"About 6:30 or 7:00 p. m. on the day in question, Mr. and Mrs. Jones went out for the evening and left plaintiff in charge of the house. Around 8:00 p. m. plaintiff left the Jones' son, Michael, and her own grandson, both of about the age of seven years, in the living room of the Jones home on the second floor, watching television, while she went down the two flights of stairs from that room and up the path to the house of her son. *She had never on previous occasions left the premises while engaged as a baby sitter for Michael.* She stated that it was her purpose to advise her son of her other arrangements for transportation to her home in view of his illness, and also ascertain the extent of that illness.

"She explained that she did not call her son by telephone because three previous telephone calls had so upset the children watching television in the same room that she did not wish to disturb them again. *She stated that she knew the telephone had a long cord which reached into the adjacent kitchen.*

"It was dusk at the time she left the premises and she went down the two flights of front steps which were lighted to the path below and proceeded to her son's house, where she remained about five minutes. Upon her return, she came down the road which sloped toward the Jones house, and which consisted of decomposed granite. As she came down the road, she noticed a light shining in the bedroom window on the floor below the living room where the children were

watching television, and decided that she would go directly to the bedroom to make preparations for putting the children to bed rather than to go to the top floor first.

"There was another stairway leading directly to the bedroom floor on the outside of the house. She faced this flight of stairs as she came down the slope toward the Jones home. There was no sidewalk, but merely the decomposed granite road which ran from her son's house parallel to these stairs and past the Jones house. She had passed these stairs earlier when walking to her son's house and on many previous occasions. At the foot of the stairs there was a concrete slab forming the landing about two and one-half feet by two and one-half feet, along the edge of that slab on the side farthest removed from the stairs, there was a five and one-half-inch cement retaining ledge, intended to hold back the dirt and water from washing down the hill onto the concrete slab.

"The decomposed granite material of which the roadway was constructed extended in a smooth fashion from the road continuously up to the side of the house, and along the side of the house up to and including the ledge. There was nothing present to block a person's path from the approach used by Mrs. Powell. There was no railing or marking of any kind to indicate the necessity for a step down before stepping up to the stairway. Mrs. Powell testified that in the dusk of evening the approach to the stairway appeared to be of one color and to extend smoothly and continuously to the first step. She stated further that no one had ever warned her about the cement ledge, nor had anyone told her not to use the stairway, and she had in fact used it with Mrs. Jones when approaching from a different direction as indicated below.

"As Mrs. Powell approached the stairs, she angled off to the left from the roadway itself directly toward the first step, and her path would have carried her over the cement ledge to the cement slab base and then up the stairs. However, when she got to the stairs she did not notice the necessity for stepping down from the retaining ledge to the landing and then up to the first step, and when she stepped off the ledge into apparent space, she lost her balance and fell, resulting in a compound fracture of the left arm.

"Mrs. Powell had been to the Jones residence on many occasions and stayed with the child. She had passed up and down the roadway between the two houses on many occasions. On a very few occasions she had used the stairway upon which

she fell, but on each of these occasions she had approached it from the opposite direction after arriving in the Jones car, and leaving the Jones garage. This garage was located between the two stairways mentioned above, and it was not necessary to pass over the concrete ledge in approaching the stairway from said garage. On the garage side, the decomposed granite ran smoothly up to the edge of the concrete slab base. For this reason, Mrs. Powell stated that she had never noticed the ledge holding back the dirt from the other direction.

"The stairway upon which she fell was not lighted by any direct light. However, there was light coming from street lights on the street below and from a window on the second floor porch, which outlines the stairway clearly, and Mrs. Powell stated that she was looking directly toward the stairs as she approached them. In order to reach the stairway leading to the second floor and the living room from which she had come, her route would have taken her past the stairs upon which she fell, past the garage, and then to the lighted stairway at the front. To reach the bedroom by that route she would have climbed two flights of stairs, walked through the living room, and descended one flight to the bedroom floor.''

After the above facts had been adduced, the trial judge granted defendants' motion for a nonsuit. This appeal followed the ensuing judgment in defendants' favor.

The multitudinous authorities in which the propriety of granting a motion for nonsuit has been considered emphasize cases where there is rightfully no factual issue to be decided that nonsuits should be granted sparingly and only in those by the jury. ▪ Although it is the established rule that in passing upon a motion for a nonsuit all conflicts in the evidence must be resolved in favor of the plaintiff and every legitimate inference favorable to the plaintiff must be drawn therefrom, nevertheless a nonsuit must be granted where no other reasonable conclusion is deducible from the evidence, if, in short, the evidence is legally insufficient to support a judgment in plaintiff's favor. (*Nicholas* v. *Jacobson,* 113 Cal. App. 382, 389 [298 P. 505] ; *Zito* v. *Weitz,* 62 Cal.App.2d 161, 164 [144 P.2d 409].) Such is the character of the case before us.

In presenting her case, plaintiff takes the position that not only was her status that of a business invitee but she was also an employee. Conceding her dual status at the

home of defendants when she assumed her duties as a baby sitter on the day in question, our inquiry will be directed to whether there is any evidence from which it may be inferred that defendants failed in the discharge of the particular duty of care owed her at the time and place of her injury.

A possessor of land owes to an invitee the duty of exercising ordinary care to keep his premises in a reasonably safe condition; and he will be liable for bodily harm, in the absence of an adequate warning, caused an invitee by a dangerous condition in the premises "if he knows or should know of the danger which he has no basis for believing that the invitee will discover." (*Popejoy* v. *Hannon,* 37 Cal.2d 159, 170 [231 P.2d 484] ; *Crane* v. *Smith,* 23 Cal.2d 288, 296 [144 P.2d 356] ; *Jones* v. *Bridges,* 38 Cal.App.2d 341, 346 [101 P.2d 91] ; Rest., Torts, § 343; 38 Am.Jur., Negligence, § 96.) Similarly, an employer is required to use reasonable care to protect his employee by furnishing him with a suitable and safe place in which to work. (*Brown* v. *Sharp-Hauser Contracting Co.,* 159 Cal. 89 [112 P. 874] ; *Miller* v. *Pacific Constructors, Inc.,* 68 Cal.App.2d 529, 545 [159 P.2d 57].) However, it is the law that the invitor is liable only for injuries caused an invitee by a dangerous condition existing in that part of the premises which the invitee may be reasonably expected to use in the proper exercise of his invitation. (*Powers* v. *Raymond,* 197 Cal. 126, 130 [239 P. 1069] ; *Bush* v. *Weed Lbr. Co.,* 63 Cal.App. 426, 433 [218 P. 618].) Likewise, the obligation of an employer to provide a safe place to work is limited to the premises "where the employee is required, for the purpose of his employment, to be." (*Albert* v. *McKay & Co.,* 174 Cal. 451, 454 [163 P. 666] ; *Kennedy* v. *Chase,* 119 Cal. 637, 640 [52 P. 33, 63 Am. St.Rep. 153].) This area of invitation may, of course, include portions of the premises allotted to the satisfaction of those incidental personal needs, convenience or amenities of the employee which it may reasonably be expected he will minister to while engaged in his employer's work. (See *De-Mirgian* v. *Ideal Heating Co.,* 129 Cal.App.2d 758, 765 [278 P.2d 114].)

It is well settled that a person coming upon a particular part of the premises as an invitee may, during his stay, enter upon other portions of the premises where his status is merely that of a licensee or even a trespasser. (*Goldberger* v. *Market St. Ry. Co.,* 130 Cal.App. 597, 604 [20 P.2d 351] ; *Biondini* v. *Amship Corp.,* 81 Cal.App.2d 751, 760 [185 P.2d 94] ;

*Gastine* v. *Ewing,* 65 Cal.App.2d 131 [150 P.2d 266].) In each change of status, the correlative rights and obligations of the invitor and invitee vary as the orbit of the invitation is either adhered to or exceeded. (*Koppelman* v. *Ambassador Hotel Co.,* 35 Cal.App.2d 537, 541 [96 P.2d 196].) █ Where an invitee enters upon portions of the premises where he has no right to be and becomes, under the particular facts, a licensee, the duty then owed him by the land occupier is to refrain from wilful or wanton injury and to exercise due care toward the licensee in the conduct of his activities at the situs. (*Oettinger* v. *Stewart,* 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221] ; *Fisher* v. *General Petroleum Corp.,* 123 Cal.App.2d 770, 777 [267 P.2d 841].) █ The question as to the extent of the invitation is normally one of fact rather than law, encompassing such considerations as the circumstances of the invitation, the relation between the parties, the character of the premises or other locus covered by the invitation, the nature of the use which the invitee may be expected to make in accomplishing the objectives of the invitation, and the conditions or circumstances under which such use is to be made. (*Gastine* v. *Ewing, supra;* *Bush* v. *Weed Lbr. Co.,* 63 Cal.App. 426, 433 [218 P. 618].) However, when there is neither dispute nor conflict as to the essential facts, and the evidence and the only reasonable inferences therefrom inescapably establish that at the time the injury occurred plaintiff was either in a part of the premises neither expressly or impliedly covered by the invitation or had left that portion of the premises where his duties reasonably required him to be in pursuit of a private purpose dissociated from his master's business, the courts have decided, as a matter of law, that the area of invitation has been overstepped. (*Medcraft* v. *Merchants Exchange,* 211 Cal. 404, 407 [295 P. 822] ; *Powers* v. *Raymond,* 197 Cal. 126, 130 [239 P. 1069] ; *Jacobson* v. *Northwestern Pac. R. Co.,* 175 Cal. 468, 472 [166 P. 3] ; *Kennedy* v. *Chase,* 119 Cal. 637, 641 [52 P. 33, 63 Am.St.Rep. 153].)

Applying the above principles to the facts of the instant case, which are reasonably susceptible only to the inference that plaintiff had exceeded the scope of her invitation and was going about on an errand for her own personal convenience, the court was clearly justified in determining that at the time and place of the injury plaintiff was a mere licensee. Plaintiff was hired as a baby sitter and there can be no doubt that she was entitled to all the facilities and accommodations

of defendants' home while discharging the duties she had undertaken. These accommodations included an invitation to make such use of the premises as was reasonably necessary for her comfort and convenience while attending to her duties as a baby sitter. If, during her vigil, it became necessary for her to go outside for any reason, real or fancied, connected with the complete or proper discharge of her duties, or if she traversed the grounds in a period of respite or relaxation from her duties which may be said to have been a reasonably contemplated incident of her employment, and injury befell her due to a dangerous condition of the premises, a jury question would have arisen as to the extent of her invitation and whether she was within its scope at the time and place of her injuries. Further, if the record showed that plaintiff had previously made arrangements with her son for transportation home following the completion of her job, which she desired to cancel because defendants had offered her such transportation, a question might arise as to whether plaintiff's visit to her son, despite the fact that she could have telephoned, was reasonably connected with the incidents of her employment. But none of these hypotheses beneficial to plaintiff, nor any other inferences favorable to her, are here present. Instead, the facts have a diametrically opposite cast.

Inasmuch as the record reveals that no transportation arrangements whatsoever had been made between plaintiff and her son, or that the latter even knew she was working that night, thus belying any business reason for the visit to his house, it is unmistakably clear that in leaving her place of employment for such visit plaintiff was not merely deviating slightly from her duties nor adopting an irregular method of performing them, nor moving from place to place on her employers' premises during an interval of leisure, as might be her privilege. Instead, she was engaged in an independent act of her own, entirely outside the service for which she had been engaged and removed from the area which bounded her invitation. It cannot logically be assumed that having been hired to safeguard a child in the absence of its parents plaintiff was either authorized or empowered to leave that child to go to another house on a mission of interest to herself alone. On the contrary, by so doing, she severed the nexus between her employer and herself, temporarily interrupting her service while in her son's house. Her return to defendants' house in the darkness was just as much a part of her personal errand as was her going to his residence. At the time and

place of her injury, in the eyes of the law, plaintiff was a mere licensee, attempting to make her way back to the arena of her activities to resume her duties after a departure therefrom not related to her work and not reasonably to be expected by defendants. Under such circumstances, the law will not impose liability on an employer where the injured employee was at a place where he was neither invited nor expected to go as an outgrowth of his employment.

Plaintiff has cited various cases arising under the Workmen's Compensation Act, and others involving the vicarious liability of the employer for the negligent or tortious conduct of his employee toward a third person. While such cases are helpful in arriving at a proper analysis and provide valuable orientation regarding the direction in which the law has progressed, they are not controlling here because of the difference in underlying principles. Under the Workmen's Compensation Act, an employee's injuries are compensable regardless of the employer's negligence so long as the injury arises out of the employment and the employee was at the time in the course of his employment. (Lab. Code, § 3600.)

Because of California's policy of liberal construction of the act in favor of the employee, any reasonable doubt as to whether an act is contemplated by the employment is resolved in favor of the employee. (*Liberty Mut. Ins. Co.* v. *Industrial Acc. Com.*, 39 Cal.2d 512, 515 [247 P.2d 697].) Likewise, in the category of cases arising under the doctrine of *respondeat superior*, an innocent third party has ordinarily been injured by some wrongful act of the employee, and a question arises as to whether liability may be fastened on the employer. In such cases, the policy of the law is that ''where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly nor indirectly could he have been serving his employer.'' (*Lockheed Aircraft Corp.* v. *Industrial Acc. Com.*, 28 Cal.2d 756, 758, 759 [172 P.2d 1].)

In the matter at bar, however, plaintiff baby sitter's case against the defendant householders rests on conventional principles of negligence, based simply on their duty to provide a safe condition in that part of the premises she was invited to use. Plaintiff's injury occurred when she had de-

parted from the ambit of her invitation to engage in a mission or excursion of personal convenience. The court properly found her to be a licensee when injured, as to whom defendants had breached no duty of reasonable care. The question of law on the undisputed facts was therefore properly decided by the order of nonsuit. (*Medcraft* v. *Merchants Exchange,* 211 Cal. 404, 407 [295 P. 822] ; *Jacobson* v. *Northwestern Pac. R. Co.,* 175 Cal. 468, 472 [166 P. 3] ; *Powers* v. *Raymond,* 197 Cal. 126, 130 [239 P. 1069] ; *Kennedy* v. *Chase,* 119 Cal. 637, 641 [52 P. 33, 63 Am.St.Rep. 153].) A finding that plaintiff was acting in the service of her employers and within the orbit of her business invitation would have been contrary to the undisputed evidence that she was upon an errand that was exclusively and purely personal.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied July 11, 1955.