[Civ. No. 24657.   Second Dist., Div. Two.   Dec. 28, 1960.]

BELLE R. SOCKETT, Appellant, v. MILTON GOTTLIEB et al., Respondents.

Wolver & Wolver and Eugene L. Wolver for Appellant.

Spray, Gould & Bowers and Joseph L. Spray for Respondents

KINCAID, J. pro tem.*—At the conclusion of plaintiff's case and before the introduction of any evidence on the part of defendants, the latter moved the trial court for a judgment of nonsuit. The court thereupon granted such motion and the clerk of the court entered his minute order accordingly. No formal judgment of nonsuit was ever filed. Appeal is taken herein from the "judgment of nonsuit" as reflected by the said minute order of the court. ▮▮▮ Such order fully disposed of the action and therefore amounts to a judgment of nonsuit from which an appeal will lie. (*Murphy* v. *Fong Shuck,* 151 Cal.App.2d 64, 65 [311 P.2d 80]; *Budrow* v. *Wheatcraft,* 115 Cal.App.2d 517, 522 [252 P.2d 637]; see *Sheta* v. *Grahm,* 156 Cal.App.2d 77, 79 [318 P.2d 756].)

▮▮▮ A nonsuit may be granted only when, disregarding conflicting evidence and giving plaintiff's evidence all the value to which it is legally entitled, indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict for plaintiff. (*Blumberg* v. *M. & T. Incorporated,* 34 Cal.2d 226, 229 [209 P.2d 1]; *Mason* v. *Peaslee,* 173 Cal.App.2d 587, 588 [343 P.2d 805].)

In light of the foregoing rule the evidence most favorable to plaintiff to be considered on this appeal is as follows: On December 8, 1957, defendants were the owners and operators of an apartment house located in the city of Los Angeles housing numerous tenants and consisting of two buildings with

---

*Assigned by Chairman of Judicial Council.

a swimming pool and access walks and stairways for common use of the tenants and their guests. On the easterly boundary of said premises is located a concrete driveway which descends from a point level with the curb at the street to about 3½ feet below ground level. This driveway leads to subterranean garages used by the tenants as well as to walkways leading to other parts of the premises. It is supported by a perpendicular retaining wall to ground level and a lawn runs along the front of the building to the edge of the driveway without any fence, barrier or other warning object to indicate any variance between lawn level and driveway.

On the night in question plaintiff, her husband and others were invited to be dinner guests of a tenant in the apartment building. They arrived in an automobile driven by a Mr. Kline who stopped in the street in front of the easterly entry. A cement walk runs from such entry to the curb. There is no public sidewalk in front of the building, the lawn commencing directly at the street curb. The three lady occupants, including plaintiff, debarked from the automobile and proceeded on the cement walk to the entry. Mr. Kline drove east on the street and sought to park his vehicle adjacent to the south curb, to the immediate east of respondents' property. Plaintiff observed that Mr. Kline had parked his car so that part of the same was in a red or ''no stopping'' zone and in fact, a small part of the vehicle was in the driveway. She formed the opinion that Mr. Kline was unaware of the situation and desired to advise him thereof, so he might properly park his vehicle. She had observed the lack and unavailability of a public side-walk. When her efforts to attract Mr. Kline's attention either by motion or verbally, appeared to her to be unfruitful, she decided to proceed to the vicinity of his motor vehicle where she might adequately advise him. Instead of retracing her steps to the street and thence to the automobile she chose to proceed over the southerly half of the said lawn which was somewhat illuminated by certain yellow lights reflecting thereon. She intended to walk over the lawn to the driveway which, at the time, she assumed to be level with the lawn and then north on said driveway to the proximity of Mr. Kline's car. The illuminating lights had the effect of blinding her as she walked upon the lawn although they formed sufficient illumination of the southerly portion thereof so that she could see where she was walking. When she came to the east edge of the lawn, she observed what she concluded was a cement divider between the lawn and the adjacent driveway. From

her position above and slightly to the west thereof, she did not observe that it was the top of a retaining wall. The driveway is paved with asphalt which is dark in color and texture. Plaintiff observed the dark area to the immediate east of what she then believed was the cement divider between the lawn and driveway and the same appeared to her to be a dark driveway at said point, level with the lawn. She made one attempted step thereon and fell to the depth of the driveway, at which point the variance in the level of the lawn and driveway was between 38 and 42 inches. Plaintiff had never been upon the defendants' premises before and she was unacquainted with the true situation of the driveway as to any variance with the level of the lawn. Plaintiff was found lying on the driveway at the point where the apartment house commences and where the level of the driveway is about 38 inches lower than the level of the lawn.

Defendant Milton Gottlieb, owner, testified he never expressly invited anyone to walk upon said lawn but that there was never a fence or barrier between the lawn and the driveway nor was the lawn fenced or signed against walking thereon. The apartment manager, gardener, maintenance man, mailman, paperboys and distributors of advertising matter occasionally walked upon or used the lawn in question.

Assuming, as we must, the foregoing factual evidence to be true, the primary question presented is whether such evidence, standing alone and uncontradicted, is of sufficient substantiality to support a verdict for the plaintiff. We have concluded that the evidence herein is sufficient to support a judgment for the plaintiff; that such evidence presented substantial questions of fact which should have been submitted to the jury for determination and the court incorrectly granted the motion of defendants for a judgment of nonsuit.

The purpose for which a person is on the premises of another is the test of whether he is an invitee or a mere licensee. (*Popejoy* v. *Hannon*, 37 Cal.2d 159, 169 [231 P.2d 484] ; *Free* v. *Furr*, 140 Cal.App.2d 378, 383 [295 P.2d 134].) If the purpose is one of common interest or mutual advantage, the person is considered an invitee; if the purpose is one of mere pleasure or benefit like that of a social guest, the person is considered a licensee. (*Ashley* v. *Jones*, 126 Cal. App.2d 328, 332 [271 P.2d 918] ; *Yazzolino* v. *Jones*, 153 Cal. App.2d 626, 636 [315 P.2d 107].)

A possessor of land owes to an invitee the duty of exercising ordinary care to keep his premises in a reasonably

safe condition; and he will be liable for bodily harm, in the absence of an adequate warning, caused an invitee by a dangerous condition in the premises if he knows or should know of the danger which he has no basis for believing that the invitee will discover. (*Popejoy* v. *Hannon, supra,* p. 170; *Powell* v. *Jones,* 133 Cal.App.2d 601, 607 [284 P.2d 856].)

The duty owed to a licensee is to exercise ordinary care in the case of active conduct on the part of the licensor with no liability for the defective condition of the premises. (*Oettinger* v. *Stewart,* 24 Cal.2d 133, 138 [148 P.2d 19, 156 A.L.R. 1221].) In the absence of active conduct of the licensor constituting negligence, a licensee must take the premises as he finds them insofar as any alleged defective condition thereof is concerned. (*Palmquist* v. *Mercer,* 43 Cal.2d 92, 102 [272 P.2d 26]; *Free* v. *Furr, supra,* p. 383.)

It is the duty of a landlord, such as the defendants in this case, to exercise reasonable care in making safe, and in the maintenance and repair of, any part of a building or other property over which he retains control and which is reserved from the exclusive use of the tenants so that it may be used in common by all tenants and all others who may lawfully enter the premises. ''The lessor's obligation extends to . . . approaches and entrances, yards, . . . and any other parts of the premises maintained for the benefit of the tenants within the purposes of the lease.'' (Prosser, Law of Torts, [2d ed.] § 80, p. 473; see *Hussey* v. *Long Dock R. Co.* (N.J.), 100 N.J.L. 380 [126 A. 314].) A violation of that duty, in the absence of contributory negligence, subjects the landlord to liability to a tenant's guest or invitee injured while lawfully on the premises within the scope of his invitation, and as a proximate result of such violation.

To prove such a violation of duty the evidence must show either that the landlord had knowledge of the unsafe or defective condition in question and failed to exercise ordinary care in correcting the same or, if he did not have such knowledge, that he would have obtained it if he had exercised ordinary care.

Whenever a person is a guest or an invitee of a tenant and, as such, enters upon a part of the premises so reserved for common use and which is under the landlord's control, he is deemed by law to be an invitee of the landlord. The duty of the landlord applies in such invitee's favor as to those parts of the premises under the landlord's control and upon or into which said invitee would reasonably be likely

to go under the circumstances of the invitation, or would be induced or allured to go by the express or implied invitation arising from those circumstances. ▮ If, however, the invitee enters any part of the premises or makes any use thereof beyond the scope of the invitation, insofar as he oversteps the bounds of his invitation, and while he does so, the landlord owes him no duty except only to refrain from intentional harm, from wilful or wanton injury; and except also that if the landlord should have actual knowledge that such a person is in a dangerous situation, injuring the person. (*Free* v. *Furr, supra,* 140 Cal.App.2d 378, 383; *Powell* v. *Jones, supra,* 133 Cal.App.2d 601, 607; *Yazzolino* v. *Jones, supra,* 153 Cal.App.2d 626, 636; *Fisher* v. *General Petroleum Corp.,* 123 Cal.App.2d 770, 777-778 [267 P.2d 841].)

▮ ''The question as to the extent of the invitation is normally one of fact rather than law, encompassing such considerations as the circumstances of the invitation, the relation between the parties, the character of the premises or other locus covered by the invitation, the nature of the use which the invitee may be expected to make in accomplishing the objectives of the invitation, and the conditions or circumstances under which such use is to be made. [Citations.] However, when there is neither dispute nor conflict as to the essential facts, and the evidence and the only reasonable inferences therefrom inescapably establish that at the time the injury occurred plaintiff was either in a part of the premises neither expressly or impliedly covered by the invitation or had left that portion of the premises where his duties reasonably required him to be in pursuit of a private purpose dissociated from his master's business, the courts have decided, as a matter of law, that the area of invitation has been overstepped. [Citations.]'' (*Powell* v. *Jones, supra,* 133 Cal.App.2d 601, 607.)

▮ As a social guest of a tenant in the apartment house, plaintiff herein became an invitee of the defendants, as landlord, when she entered upon those parts of the premises which had been retained for common use and under the landlord's control and upon which she would reasonably be likely to go or would be induced or allowed to go under the circumstances of the express or implied invitation. The cement walkway from the street to the entry and the lawn as a part of the yard were included in portions of the premises reserved by the landlord under his control. He had provided no sidewalk to the street for use of his tenants and others but had provided a broad expanse of smooth lawn unimpeded by plant-

ing, fences or signs warning against use. Can it reasonably be said that as a matter of law, plaintiff exceeded or went beyond the scope of the invitation to her as an invitee, or was contributorily negligent, when under the circumstances here shown she elected to choose a route directly toward Mr. Kline over the lawn rather than to retrace her steps on the walkway to the street and there proceed beside parked automobiles and in proximity to possible moving traffic? Should not the landlord have reasonably foreseen that, from the physical circumstances here shown, invitees upon his premises might be induced or allured to proceed over his lighted lawn toward the unguarded depressed driveway and therefore should he not have taken necessary precautions to protect them from consequent injury?

 During the trial plaintiff presented to the court and asked that judicial notice be taken of certain ''General Industrial Safety Orders.'' The sections covered the following subject matters: section 3202, the application of said safety orders; section 3225, the specifications for a standard railment of railings in working levels above the floor; section 3239, the requirement of railings for floor openings; and section 3240, the requirement of railings for permanent yard surface openings such as pits or sumps.

The failure to offer or introduce into evidence such safety orders is immaterial, since it is conclusively established that the courts will take judicial notice of the General Industrial Safety Orders of this state. (*Armenta* v. *Churchill* (1954), 42 Cal.2d 448, 455 [267 P.2d 303]; *Hyde* v. *Russell & Russell, Inc.* (1959), 176 Cal.App.2d 578, 584 [1 Cal.Rptr. 631].)

A limitation upon the application of the general rule that a licensee takes the premises on which he enters as he finds them and assumes the ordinary risks incident to the condition of those premises, is found when the condition of the premises complained of is the result of a violation of a statutory duty imposed upon the owner by safety regulations *prescribed for the benefit of the general public.* (*Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal.2d 846, 850 [313 P.2d 854]; *Longway* v. *McCall,* 181 Cal.App.2d 723 [5 Cal.Rptr. 818].) In such a case the licensee does not assume the risks incident to such condition.

It appears, however, that none of the above-numbered General Industrial Safety Orders apply to the premises and facts of this case. Section 3237b requires a standard rail-

ing on runways, ramps or other working levels four feet or more above the floor, ground or other walking areas. Here the maximum depth of the driveway below the level of the lawn is conceded to be 42 inches. Section 3239 requires railings in certain floor openings and floor holes. No reference is made to ground or yard and it appears that the provisions of this section were intended to apply only to buildings or places of employment indoors. Section 3240 requires railings around permanent yard surface openings such as pits or sumps.

Webster's New International Dictionary, second edition, 1943, defines "pit" as "a cavity or hole in the ground, natural or artificial . . . A deep place; an abyss; . . . A large hole from which some mineral deposit is dug or quarried; . . ." "Sump" is defined as "a marsh, . . . a pit, depression, reservoir, tank, etc., serving as a drain or receptacle for fluids . . ." Neither term may reasonably be applied to the driveway on defendants' property here in question.

From the foregoing we conclude that the evidence herein is of sufficient substantiality to support a verdict for the plaintiff. The motion for a judgment of nonsuit should have been denied and the cause, including such further evidence as may have been properly received, should have been submitted to the jury for factual determination.

The judgment of nonsuit is reversed.

Fox, P. J., and Ashburn, J., concurred.