[Civ. No. 2837.   Third Appellate District.—November 13, 1925.]

W. R. FEDEROFF, Plaintiff and Respondent, v. BIRKS BROS., a Copartnership, etc., et al., Appellants; H. B. WHITTEN, Cross-defendant and Respondent.

[1] SALES — FALSE REPRESENTATIONS — RELIANCE UPON BY BUYER — EVIDENCE—ISSUES—APPEAL.—On this appeal from a judgment in favor of the plaintiff in an action to recover a balance alleged to be due upon a promissory note executed and delivered by defendants to plaintiff's assignor on account of the purchase price of a motor-truck, and in which the defendants interposed the defense of fraud and misrepresentation, from the fact that the record failed to disclose any testimony showing that defendants relied upon any alleged false representations made by plaintiff's assignor, it was not necessary for the appellate court, in determining the appeal, to comment upon the testimony alleged to constitute false representations, or to pass upon the question whether there was a waiver by defendants of the false representations, or whether the trial court erred in refusing to permit oral testimony as to an alleged agreement for a one-year period to make payment for the truck as an explanation of a letter from defendants to plaintiff's assignors stating that defendants would have to have an extension of time.

[2] ID.—ISSUES—LACK OF EVIDENCE—DIRECTED VERDICT.—In such action, there having been an absolute lack of testimony showing that defendants relied upon any alleged false representations made by plaintiff's assignor, and there having been no evidence tending to show that plaintiff's assignor knew any of the alleged statements to be false, or had any reason to know the same, assuming that they were in fact false, the trial court properly directed the jury to bring in a verdict for the plaintiff.

[3] ID.—ATTORNEY'S FEES—STIPULATED PERCENTAGE—PLEADING—EVI-DENCE—INSTRUCTIONS.—In such action, the promissory note having provided for an attorney's fee of a specified percentage in the event the note was placed in the hands of an attorney for collection, and said note having been pleaded *in haec verba*, and the prayer of the complaint having asked for an attorney's fee of said specified percentage, and the matter of attorney's fee not having been mentioned in the answer, and no testimony having been introduced concerning the reasonable value of the services performed by the attorney for plaintiff, the trial court

1. See 12 Cal. Jur. 750.
2. See 24 Cal. Jur. 913; 26 R. C. L. 1073.
3. See 19 Cal. Jur. 1056.

did not err in submitting the matter of attorney's fee to the jury, stating the amount due, calculated at said specified percentage, and that the jury might fix the attorney's fee at such reasonable sum as the jury might deem proper, not exceeding said specified percentage.

(1) 4 **C. J.**, p. 649, n. 36.    (2) 35 **Cyc.**, p. 86, n. 30 New.    (3) **8 C. J.**, p. 1101, n. 60, 66, 67, p. 1102, n. 68, 69, p. 1103, n. 86.

APPEAL from a judgment of the Superior Court of Sutter County. K. S. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

Arthur C. Huston and Arthur C. Huston, Jr., **for Appellants.**

John R. Connelly and Arthur Coats for Respondents.

PLUMMER, J.—Action to recover balance of $950 alleged to be due upon a promissory note executed and delivered for the sum of $1,620, by the Birks Bros., to the defendant H. B. Whitten, and assigned by him to the plaintiff W. R. Federoff. The note was given on account of the purchase price of a 2½-ton U. S. truck sold upon contract. The defendants interpose the defense of fraud and misrepresentation. The action was tried before a jury, and at the conclusion of the defendants' testimony upon the defense of fraud and misrepresentation, the court directed the jury to bring in a verdict in favor of the plaintiff and cross-defendant and against the appellant in the sum of $950, and also directed the jury to fix the amount of the attorneys' fees. The jury brought in a verdict as directed and fixed the attorneys' fees at the sum of $50. From this judgment the defendants Birks have appealed. The appellants in their answer set up a number of specifications of fraud and misrepresentation, but at the trial attempted only to prove two of the items thereof, to wit: That the plaintiff's assignor represented the truck to be in good running condition, and, also, that the truck would carry a tractor weighing about 7,500 pounds. The truck involved in this transaction was a second-hand machine and had been used about six weeks. The evidence shows that, in response to an advertisement inserted in a Sacramento paper by the respondent Whitten that he had a

second-hand truck for sale, the appellants called upon said Whitten at his office in the city of Sacramento, examined the truck and entered into negotiations with him culminating in the purchase thereof. During the course of the conversation leading up to the purchase, it is claimed by the appellants that the respondent Whitten made certain false and fraudulent representations both as to the capacity of the 2½-ton truck to carry a tractor weighing 7,500 pounds and also as to the condition of the truck. The testimony of John T. Birks, who appears to have conducted the negotiations on the part of the appellants; on direct examination, concerning the carrying capacity of the truck, is set out in the transcript as follows: "A. I told him what make of a tractor it was and told him just what it weighed. Q. What was it? A. It weighed on the road 7,600 pounds with a load. Q. And did you tell him with a load? A. It was about 7,500 with a load. Q. What was said about the road between your place and Santa Rosa? A. I told him the kind of a road we had to travel over and he was acquainted with it and he said he would guarantee to haul that tractor over that road." The same witness, upon direct examination as to the condition of the truck, testified as follows: "A. He said it was in good condition and guaranteed it to be in good condition and would do that work for which we wanted it." Upon cross-examination this witness testified as follows: "A. He guaranteed it to haul that tractor and told me—I told him what it weighed and he guaranteed it to haul that tractor and I told him of the other work we wanted to do with it and he said it would do that work." It further appears from the testimony that one of the purposes for which the appellants wanted the truck was to haul the tractor over the road mentioned between two farms. As to the condition of the truck, the witness testified as follows: "Q. Now in what particulars was the truck not in good running condition when you took it across the bridge into Yolo County? A. You say why wasn't it in good running order? Q. Why wasn't it in good condition, in what way? A. I couldn't say there was anything the matter with it when we got across there. Q. In what particulars was it not in good running condition when you took it across the bridge? A. I supposed it was in good running condition. Q. Well was it? A. It seemed to be when we took it across. Q. You think it was? A. It seemed to be. Q. You testify now,

or your testimony now is that it was in good running order when you took it across that bridge? A. Well as far as I could see it, at that time. Q. I am asking you at that time in your opinion was it in good running condition? A. It seemed to be as far as I could tell. Q. And you believed it was? A. It seemed to be. Q. Then you think at the time you first took it into your possession that the truck was in good running order? A. Well it seemed to be. Of course it gave me trouble on the way home. Q. But you think when it was delivered to you it was in good running condition? A. It seemed to be. Q. And you believed it was? A. Well I believed it was. It seemed to me that way." The witness further testified that he had difficulty with the truck on the way home and that it stopped on him several times and that once when it stopped he had the assistance of someone to remedy the defect and then he proceeded on with the truck. The testimony simply shows that the driver of the truck had some trouble with it in reaching home, but the testimony does not disclose what the defects, if any there were, in the machinery of the truck, or what, if any, there was of poor condition in the truck that caused the driver thereof to have the difficulty mentioned.

The truck was purchased some time during the month of November, 1921. The attempt to haul the tractor with the truck was not made until some time late in the spring of 1922. The testimony in this particular is as follows: "A. Well, we loaded the tractor on and tried to haul it. Q. And where did you load the tractor on? A. At the home ranch near Meridian. Q. And how long was that after you purchased the truck? A. Well, I don't remember just how long it was. It was some time that spring after we purchased the truck. Q. And what experience did you have in that connection? A. We loaded it on and spent nearly an entire day trying to make it pull and get it out of the corral. Q. That was at your river ranch in this county? A. Yes, sir. Q. On level ground? A. Yes, sir. Q. Tell us what you did? A. We loaded the tractor on it one day and we were going to take it out there the next day and we tried to drive it and it would go a short distance and stop. Q. By stopping you mean the engine would stop? A. Yes, sir, the engine would stop. Q. And how far did you get in your effort to haul the tractor to

the work? A. I never got it out of the corral or barnyard. Q. Who was there with you? A. Myself and brother. Q. How long did you work with the truck to take it out? A. All day. Q. Did you succeed in hauling this tractor at all? A. No.''

The action in this case was not begun until some two years after the transaction mentioned and during that period of time the testimony shows that the appellants spent something like $300 in having repairs made upon the truck. It further appears that the appellant John R. Birks had a conversation with Whitten about the truck some months after its purchase, in which conversation the respondent Whitten advised the appellants to take the truck to some good mechanic and have him go over the same. The record shows no testimony of any mechanicians. It also appears that some conversation was had between one of the appellants and the respondent Whitten after the institution of this action in which the appellant stated that the truck was ''no good'' and Whitten replied, ''that a fellow would naturally say that because he was suing him for the pay of the truck.''

The testimony fails to show the condition of the ground in the corral where the appellants attempted to haul the 7,500-pound tractor upon the 2½-ton truck. Whether the ground was soft and yielding or hard and unyielding does not appear. There is not a word of testimony as to whether the ground in the corral was similar to the road over which the appellants stated that the respondent Whitten guaranteed that the truck would haul the tractor. The testimony does not show that any attempt was ever made by the appellants to haul the tractor over the road in question, or to haul the tractor by the truck over any ground where the conditions would be similar. The testimony of the alleged representations in this particular is, as we have said, in the following answer: ''I told him the kind of a road that we had to travel over and he was acquainted with it and he said he would guarantee it to haul that tractor over that road.'' It is strongly insisted by the respondents that this is neither a false nor a fraudulent representation; that it is, at most, only the expression of an opinion. It is only the conclusion of the witness. What the respondent may have said in relation to the capacity of the truck does not appear, but taken as a representation and as the expression of a fact, there appears nothing in the testimony to show that

the truck would not do exactly what the respondent Whitten said it would do, which, of course, disposes of this question, whatever conclusion may be reached based upon the statement of the witness couched in the language which we have set forth. It may be further stated that there is no testimony called to our attention or discoverable in the transcript showing that the appellants relied upon any statements made by the respondent Whitten, or were deceived in any manner thereby. In this particular, our attention is called to the testimony of the witness J. R. Birks as to the capacity of a 2½-ton truck to carry a load weighing 7,500 pounds: "Q. Have you ever hauled your tractor on a two and one-half ton truck before? A. Other people have hauled it. Q. Other people have hauled it? A. Yes, sir. Q. And you believed at the time you purchased the truck that a two and one-half tractor, or that a two and a half ton truck would haul a load like that did you? A. Two and a half ton truck? Q. Yes, a two and a half ton truck would haul a load like that? A. Yes sir, when I saw it done. Q. You knew that of your own knowledge? A. Yes sir, I saw it done, twice, on a two and a half ton truck. Two times. Q. If a person represented to you that a truck was a two and half ton truck you would conclude of your own knowledge that it would haul a tractor of that size? A. Yes, he guaranteed it to do it." The witness further testified on redirect examination that he had seen a similar tractor hauled on a 2½-ton truck, and, in addition, a 15-gallon can of oil and a box of tools, etc.

While it does not appear to have been taken into consideration, in directing a verdict to be rendered for the plaintiff, the testimony shows that at a former trial of this action the truck in question was loaded with 75 sacks of cement and driven along the streets in Yuba City, but the weight of the cement sacks is not shown. The testimony shows that the contract for the purchase of the truck was taken by the appellants to their home and four or five days after its receipt was sent back to the respondent Whitten for correction, was sent to them again by the respondent Whitten, and after some weeks finally signed by all of the appellants and returned to the respondent Whitten. During all of this period of time the contract was in the possession of the appellants. The question being considered

during this period of time was that of fixing the date or dates of payment of the unpaid portion of the purchase price of the truck. After the final execution of the contract and during the period of time that elapsed between the date thereof and the institution of this action, the defendants paid thereon the sum of $700. It is further insisted by the respondent that any alleged fraudulent representations made by the respondent Whitten were waived by the conduct of the appellants in asking for and receiving additional time in which to pay for the truck. The record shows that on or about the twenty-third day of May, 1922, the appellants wrote to the respondent Whitten as follows:

"Meridian, May 23-22.

"H. B. Whitten. Dear Sir: Your letter received and in reply will say that we will have to have an extension of time as there is nothing coming in now just before harvest. After harvest we will be able to meet it. Will try to get down to Sacramento before that time to arrange the matter.

"Yours truly,

"BIRKS BROS.

"Meridian, Cal."

On the part of the appellants it is claimed that the court erred in refusing to allow the appellants to offer an explanation of this letter that at the time of the execution of the contract it was verbally agreed that the appellants might have a full year's time within which to make the payments for the truck. While no action was begun to enforce payment of the contract until long after the period mentioned in the appellants' letter, bearing date of May 23, 1922, the record does not show any formal extension of time executed or granted for the payment of the balance due upon the contract. The record further shows that at the time of the trial, or shortly preceding the date thereof, the plaintiff sought permission of the defendants to demonstrate that the truck in question would haul the tractor over the road mentioned by the respondent Whitten in the conversation had during the negotiations for the purchase and sale of the truck and that this permission was refused.

[1] From the fact that the record fails to disclose any testimony showing that the appellants relied upon any alleged false representations made by the respondent Whitten, we think we do not need to comment upon the testimony

alleged to constitute false representations, or to pass upon the question whether there was a waiver of the alleged false representations, or whether the court erred in refusing to permit oral testimony as to an agreement for a one-year period to make payment for the truck as an explanation of the letter referred to, as these matters are not necessary for a determination of this case. We may state, however, that in addition to the lack of testimony which we have just mentioned, there is nothing in the record tending to show that Mr. Whitten knew any of the alleged statements to be false, or had any reason to know the same, assuming that they were, in fact, false. There was no evidence that respondent Whitten was in the truck business other than he had this second-hand truck for sale and was in the automobile business.

[2] In view of the lack of testimony to support appellants' allegations of fraud and misrepresentations, we deem it unnecessary to refer to more than one case in support of the ruling of the trial court in directing the jury to bring in a verdict for the plaintiff. In *Jacobson* v. *Northwestern Pac. R. R. Co.,* 175 Cal. 468 [166 Pac. 3], it is said: "A directed verdict is proper, unless there be substantial evidence tending to prove in favor of plaintiff all the controverted facts necessary to establish his case. In other words, a directed verdict is proper whenever, upon the whole evidence the judge would be compelled to set a contrary verdict aside as unsupported by the evidence. To warrant a court in directing a verdict, it is not necessary that there should be an absence of conflict in the evidence, but, to deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one." It is not a question of a conflict of evidence in this case, assuming that there might be some conflict in the evidence set out in the transcript or that different inferences might be drawn from the testimony to which our attention has been directed and which we have set forth, but it is a question of a lack of testimony upon matters essential and necessary to be proved in order to make out a case based upon fraud and misrepresentation. There being such lack in this case, a directed verdict for the respondents was proper.

[3] The appellants finally insist that the court erred in directing the jury to fix the amount of the attorney's

fees to be allowed the plaintiff. No testimony was intro-
duced concerning the reasonable value of the services per-
formed by the attorney for the plaintiff. The note sued
upon contains the following clause: "And I (we) agree
in the event this note be placed in the hands of an attorney
for collection, to pay 15% of the amount due hereon as
attorney's fees." This note is set out *in haec verba* in the
complaint and the prayer of the complaint asks for "an
attorney's fee of 15% of the amount due," etc. In the
answer filed by the appellants, the matter of the attorney's
fee is unmentioned. The court, in submitting the matter
to the jury, stated that the amount due, calculated at 15%,
was the sum of $174.90, and that the jury might fix the
attorney's fee at such reasonable sum as the jury might
deem proper, not exceeding $174.90. The jury fixed the
amount at $50. While it is true that the amount of the
attorney's fees to be allowed might have been contested by
the appellants, no attempt was made so to do. It is be-
yond question that in the note executed by the appellants,
they contracted to pay an attorney's fee in the sum of
15% on the amount due. The contract reads, a certain sum,
and not a reasonable fee, which may not exceed a certain
fixed sum, as is the case in many instances. In the case
of *Alexander* v. *McDow*, 108 Cal. 25 [41 Pac. 24], the
facts are to all intents and purposes exactly the same as
the case at bar. The note set out in the complaint fixed
definitely the attorney's fee to be paid. The prayer of the
complaint asked for that fee which was fixed at 10% in the
note on the amount found to be due. Default was made
by the defendant and the clerk entered up the amount of
the attorney's fee, and this action was contested on appeal.
No testimony, of course, was introduced, either *pro* or *con*.
The note in that case read: "10% of total amount due for
attorney's fees," etc. Upon this character of a complaint,
with no question raised as to the attorney's fee by answer
filed therein, the court in the Alexander case, held as follows:

"We think, also, that there is sufficient in the complaint
to support the allowance of attorney's fees. The note,
which is set forth in full, provides for them, and the prayer
of the complaint asks for them, and the action is brought
by an attorney at law. The sum asked as attorney's fees
is susceptible of exact determination by simple mathematical

calculation. It is fairly deducible from the complaint, therefore, that plaintiff asks an allowance of a specific sum as being reasonable and due for attorney's fees under the contract. It is true that this demand is in the nature of special damages, the allowance of which might have been contested by defendant. (*Prescott* v. *Grady,* 91 Cal. 518 [27 Pac. 755].) But his default admits the truth of the matters pleaded, and must, therefore, be construed to admit that the amount claimed is both reasonable and due. Thus no evidence was required to be taken for the purpose of fixing that amount.''

In 8 C. J. 1101, it is said: ''The amount of fees fixed by the instrument sued on is at least *prima facie* the sum recoverable, subject to be reduced, it is generally held, where such sum is unreasonable and excessive. It is generally held that a provision for a fixed per cent as attorney's fees is a contract of indemnity, and not for liquidated damages, so that the maker is liable to the holder only for the amount of attorney's fees actually contracted for, or, in the absence of a special contract for fees, for the reasonable value of the services rendered; but there is authority for the contrary, holding that the sum or per cent fixed is liquidated damages.'' Cases are also there cited to the effect that the plaintiff is *prima facie* entitled to recover the per cent stipulated for as attorney's fees and need not in the first instance show that he has contracted to pay his attorney such per cent or that it is a reasonable sum. In the case at bar, just as in the case of *Alexander* v. *McDow,* the complaint is signed by an attorney at law, and, further, there can be no question that the sum of $50 allowed by the jury is far below what any court would ordinarily fix as a reasonable attorney's fee. The record shows that two days were consumed in the trial.

The judgment is affirmed.

Hart, J., and Finch, P. J., concurred.