[Civ. No. 8606. First Appellate District, Division One.—March 27, 1933.]

JOSEPH GOLDBERGER, Appellant, v. MARKET STREET RAILWAY CO. (a Corporation), Respondent.

Daniel A. Ryan, Thomas C. Ryan, George M. Naus and Hubert Wyckoff for Appellant.

Wm. M. Abbott, Wm. M. Cannon and Walter H. Linforth for Respondent.

PARKER, J., *pro tem.*—The action is to recover damages on account of personal injuries alleged to have resulted through the negligence of defendant. The case was tried before a jury and verdict rendered in favor of defendant. Judgment followed pursuant to said verdict. Plaintiff prosecutes this appeal. The facts may be narrated.

Plaintiff is, and was at all the times within the period discussed, a buyer of used machinery and equipment. The defendant Market Street Railway Company was the owner of certain motors, belting and machinery formerly used in a power-house located within the city of San Francisco. This power-house had been closed but not dismantled; much of

the machinery remained practically in place and consisted of large and heavy equipment such as is generally used in and about similar plants. Plaintiff had become interested in the purchase of the machinery and had approached the proper persons authorized to act for defendant. It was arranged that plaintiff should have access to the power-house and an opportunity to examine and appraise the equipment. Accordingly the Railway Company, defendant, delegated an employee named Shufelt to take plaintiff over to the power-house, open up the place and permit plaintiff and an associate to go in and look over the machinery. While engaged in the examination of some belting, plaintiff fell into a pit on the premises and sustained serious injury. The foregoing sketches the admitted facts.

We may proceed with the respective claims of appellant and respondent. In this review we revert to the original designation of the parties, viz., plaintiff and defendant. Continuing, then, we find plaintiff and the servant of the defendant at the door of the power-house preparatory to entry. Both sides agree that at that time plaintiff's relation to defendant was that of an invitee to whom defendant owed a certain duty. The defendant was obligated to use ordinary care for the safety of his said invitee and if there was any danger attendant upon the entry, or upon the work which the invitee was to do upon or in the premises, and such danger arose from causes or conditions not readily apparent to the eye, it was the duty of defendant to give the said invitee reasonable notice or warning of such danger. (*Shanley* v. *American Olive Co.*, 185 Cal. 552 [197 Pac. 793]; *Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556 [296 Pac. 76].) The power-house was opened and plaintiff and his associate, together with the guide or caretaker of the defendant, entered. There is some conflict in the evidence as to the then condition of the premises with regard to the sufficiency of the lighting. It may be conceded, as indeed it is, that the building had many windows through which came natural light sufficient to permit a survey of such objects as arose above the floor level. However, the evidence might support a conclusion that the floor surface was somewhat dark and shaded. This condition would result from the fact that large pieces of machinery standing upon the

floor would prevent the light from reaching certain parts of the building. The trial court was of the opinion that the question of lighting was an issue to be determined by the jury.

The plaintiff had been engaged in the business of buying machinery and equipment for a period of almost twenty-five years. He had purchased other material from a different power-house but he had never seen or been in the power-house herein concerned. Almost immediately upon entry into the building, plaintiff began an examination. He began with a large motor and after going over that he started on the belting. Plaintiff testified that he then asked the attendant or guide whether there were any cellars or holes in the building, and the reply was that there was no hole or cellar, but a solid concrete floor all through. The attendant asked plaintiff the purpose of the question and plaintiff informed him that if there was a celler it would be necessary to prop up the timbers in the cellar in case a derrick had to be used in lifting out the machinery. Some importance is hereafter attached to this conversation and it is timely that we give more detail thereon. In passing, we note the attendant denies any such conversation took place, and denies that he ever told plaintiff there was no cellar or that there were no holes in the floor. Disregarding the conflict and assuming that the conversation occurred, it must be borne in mind with the question and the purpose thereof. At the time the question was asked the plaintiff was standing directly beside a pit in which a fly-wheel operated. He admitted seeing this pit, and possibly one more. Obviously, his question concerning holes or cellars had no reference to the pits used in the installation of machinery. Further, considering the reason plaintiff desired the information as stated, the given reason was that it would make a difference if a derrick were used in moving out the machines, because if there was a cellar or hole the timbers sustaining the floor above would have to be strengthened. Such a course would not be necessary in the case of pits in the surface of the floor. Therefore, we may assume, and there seems to be no contradiction either in fact or argument, that the presence or absence of floor pits was not the information sought.

The plaintiff being an expert in the dismantling of machines and having an admitted knowledge of at least one

other power-house in San Francisco, knew of the methods of installation used in power-houses, and that such methods contemplated the use of pits wherein the larger fly-wheels and other mechanisms operated. From this situation of the record we are not inclined to place upon this claimed conversation the importance appellant seems to attach thereto. After being in the power-house fifteen or twenty minutes, plaintiff was engaged in examining a certain belting. He was going slowly, scrutinizing every foot of the belting, testing its pliability, fiber and general condition. After the examination had proceeded up to this point and the parties were about finished on this particular item, and preparatory to going further into the back of the building, the attendant Shufelt said: "Wait, and I will see if I can get some light." Thereupon he left the party to reach a light switch. While he was away plaintiff proceeded with his examination and backed off into a pit, falling therein and sustaining the injuries complained of.

Plaintiff denies that the attendant said anything to him about waiting or about getting a light. Plaintiff, in denying this statement having been made, affirms that there was no need of any light, and on this point there is complete accord from all sides to the effect that there was sufficient light to disclose everything above the surface. Defendant contends there was sufficient light to disclose everything, including the floor. Admitting the conflict and without attempting to determine it, the conceded fact is that if further light were required, it was to give a clear view of the floor, and the contour thereof, and to disclose any openings therein. Therefore, at the time when the attendant made the remark and gave the notice that more light was desirable, the party had reached a point at or near which the shadows of the surrounding structures obscured or shaded the floor plan. Summing up the situation to this point, we find the plaintiff upon the premises of defendant as an invitee, for whose safety defendant was bound to use ordinary care; that the exercise of such ordinary care required defendant to give plaintiff ample warning of concealed danger. The plaintiff proceeded under the guidance of defendant's agent through the premises wherein there was no danger concealed, and where an abundance of natural light threw into view the conditions existing. At the very

moment a point was reached where the natural light seemed insufficient, the attendant called the fact to the attention of plaintiff and directed him to await the aid of artificial light. Thus prefaced, we reach the point of the appeal.

In submitting the case to the jury, the court gave the following instruction: "The only alleged negligence referred to in plaintiff's complaint, upon which he bases his cause of action, is the alleged failure of the defendant to warn him of the existence of that pit into which it is claimed that he fell. If you find from the evidence that prior to the time it is claimed that plaintiff fell into such pit and while he was standing in a part of said premises distant from said pit he was told by an employee of said defendant to wait where he was until a light was obtained, but instead of so doing he proceeded to that part of said premises where said pit is located, then I charge you that such warning fully discharged the duty of the defendant in the premises, and if you so find, your verdict should be against the plaintiff and in favor of the defendant, Market Street Railway Company." The entire appeal centers about this instruction.

Appellant specifies two grounds of attack: 1. That the court erred in ruling, as a matter of law, that it was a full discharge of defendant's duty for Shufelt, the attendant, to say, without more, merely: "Wait, and I will see if I can get some light." 2. The court erred in assuming as a fact that such an equivocal remark was a warning of concealed danger, rather than a courteous offer to illuminate the belting, to make examination easier. We have three interesting, learned and instructive briefs on the attacked instruction, and every word is painstakingly analyzed and argued. We are not inclined to follow the respective arguments throughout all the niceties urged. We will consider the instruction as a whole. In its effect the instruction told the jury that if the plaintiff was standing in a place of safety and was told by the attendant, under whose guidance he was permitted entrance to the premises, to wait where he was until a light was obtained, and plaintiff had disregarded this order and proceeded on without waiting, there had been no failure of duty on the part of defendant. It seems of not the greatest importance that we determine whether the words of the attendant constituted a warning or a direction.

■ An owner of premises is charged with a knowledge of the condition of these premises when he invites others thereon. He is charged with the duty of conveying that knowledge to an invitee. We can conceive of no better way of conveying that knowledge than for the owner to accompany the invitee and point out the way, and the danger if any. The owner is not an insurer of persons whom he has invited into his premises. The responsibility of such owner for the safety of such person in such a case is not absolute; he is only required to use ordinary care for the safety of persons he invites to come upon the premises. (*Weddle* v. *Heath*, 211 Cal. 445, 452 [295 Pac. 832].)

■ The fact that there were pits in the building, under the evidence, was obvious and fully apparent and well known to plaintiff. True, the exact location of these pits was not known to plaintiff, or at least we may deem such knowledge to have been a disputed fact sufficiently in conflict to render erroneous any instruction based upon an assumption thereof. On such portions of the floor where light was thrown, the presence of any depression or pit was unmistakable. The pit itself was not a concealed or latent hazard. The danger lay entirely in the fact of darkness. The one definite way to destroy and remove the latent danger was to make it visible and obvious, and there was no surer method of accomplishing this result than by light. The words of defendant's employee, directed to plaintiff at a point where for the first time any latent danger might be, were sufficient to convey to plaintiff a notice of the lack of light, and with such notice came also a knowledge that danger might lurk in the shadows. The questioned instruction told the jury that if defendant's employee had told plaintiff to await more light before proceeding, and plaintiff, heedless of the order or suggestion, went on alone into danger, the jury should find for defendant. Whether or not the statement of defendant's said employee was a warning is not conclusive of the question. If, as the instruction indicates, the words and conduct of the employee fully discharged the duty owed to plaintiff, it becomes immaterial that the duty assumed in the instruction might have been loosely stated.

■ The whole theory of plaintiff's case is that he was on the premises trusting his safety to this employee; that

because the employee was derelict in his duty of conducting plaintiff safely through the building, the latter was injured. No negligence is claimed in the manner of keeping the premises, nor is it alleged that in any respect the premises were maintained in an unsafe and dangerous condition. The whole case rests on the conduct of defendant's employee in giving plaintiff safe conduct through. Having thus framed the issues, plaintiff cannot now claim that he could entirely disregard the orders or direction of the attendant and launch out by himself, unfamiliar with the premises, and still claim the protection which he had rejected.

It is well settled that a single individual may, on the same premises and during practically the same period, occupy various legal relationships toward the owner. One may have entered the premises under invitation, and during his stay he may become a licensee as to certain portions and a trespasser as to others. In each change of status the rights and duties of the respective parties vary. (*Lindholm* v. *Northwestern Pac. R. Co.*, 79 Cal. App. 34 [248 Pac. 1033].) An invitee who enters on portions of the premises where he has no right to enter becomes a licensee, and the only duty owing him then is to refrain from wilful or wanton injury. (*Chichas* v. *Foley Bros. Grocery Co.*, 73 Mont. 575 [236 Pac. 361].) It is well settled that a person may be an invitee in a portion of a building and not enjoy that status as to other portions thereof. (*Medcroft* v. *Merchants Exchange*, 211 Cal. 404 [295 Pac. 822]; *State Compensation Ins. Fund* v. *Allen*, 104 Cal. App. 400 [285 Pac. 1053].) By way of illustration if one invites a buyer of furniture to his home for the purpose of inspecting and appraising furniture offered for sale, and upon his arrival at the home the front room is crowded with chairs and tables, and in full light and after inspection of the goods in said room the owner states that there are other goods in the next room, which is unlighted, and tells the invitee to wait until a light is obtained, there can be no question but that the owner is absolved from the necessity of any further warning as to any latent dangers that may be in the latter room. And under such conditions, the former invitee going unattended and without light into the second room, shifts his status from an invitee to a mere licensee, if not a trespasser.

In *Colberth* v. *Great Atlantic & P. Tea Co.*, 36 App. D. C. 569, we find a situation similar in many respects to the case at bar. Many authorities are reviewed and the conclusion supports the views herein announced. Referring to a direction given by an employee to an invitee, the court says: "Such a request, if clearly expressed, was quite as effective as a command to withdraw the implied invitation theretofore existing." The facts of the instant case reflect the illustration. The instruction assumes plaintiff in a place of safety, distant from the pit. The claim of plaintiff is that the presence of the pit was not disclosed on account of the darkness. The duty on defendant was to make such disclosure either by word of mouth or otherwise. Defendant was in the actual discharge of such duty, and plaintiff refused the care and protection offered. Giving appellant's construction of the instruction its greatest effect, we concede that the court told the jury to find for defendant if the evidence showed that plaintiff had ignored the offer of light and disregarded the order or request to proceed no further until light was obtained. We think it was a proper instruction.

The second ground of attack upon the instruction is that it is an instruction upon the facts. The argument is that it was a disputed question whether the words used were merely by way of a courteous offer to aid in examining the belting or whether the words were intended to convey the idea of a safer progress through the remaining equipment. In *Colberth* v. *Great Atlantic & P. Tea Co.*, *supra*, we find this apt language: "The plaintiff insists that the jury should have been permitted to find not only whether she was notified not to go back where the trap door was located, but also whether the plaintiff, in view of the nature or character of such notice, exercised that degree of care and caution demanded of her; in other words, that, notwithstanding the jury should find that the defendant expressly withdrew its implied invitation to the plaintiff to enter the rear of its store, where this danger existed, and notwithstanding that she, without the knowledge of the defendant, disregarded such express notice of withdrawal, and placed herself in a position of peril, the jury should be permitted to speculate whether the defendant ought not to have gone further and assigned a definite reason for its

action. We are unable to assent to this doctrine." And here we, too, find an inability to assent to the contention that the attendant was required to state more fully the reasons for his order to await the light. The plaintiff denies that such words were used at all. We will not attempt to guess on the interpretation plaintiff would have given the words had he heard them. Suffice it to say that to any intelligent mind the thought conveyed is that more light would be furnished. And to the same mind would come the idea that the light would. dispel the darkness; and with darkness dispelled no danger would exist. (*Colberth* v. *Great Atlantic & P. Tea Co., supra.*)

In *Wixon* v. *Raisch Improvement Co.*, 91 Cal. App. 129, 134 [266 Pac. 964], it is said that the difference between the words "stop" and "wait" is infinitesimal. An order to wait is a command to stop. No other complaint is made as to instructions given or refused, nor is error predicated upon any of the trial court's rulings in the admission or rejection of testimony. Therefore we assume that the law as applicable to all phases of the case and all theories of the parties was fully explained to the jury. A full and complete hearing was given. The plaintiff himself set forth, in the following instruction given at his request, the duty he claimed owing to him: "You are instructed that one who invites another upon his premises owes such invited person the duty of having his premises in a reasonably safe condition and of maintaining his premises in a reasonably safe condition, and of exercising reasonable care in protecting the invitee from injury, and of giving warning of concealed perils." The instruction here reviewed is complementary thereto and correctly sets forth the manner in which such duty may be discharged.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 26, 1933, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 25, 1933.