[Civ. No. 1394. Fourth Appellate District.—April 1, 1936.]

VIRGINIA MAY STEWART, as Administratrix, etc., Respondent, v. LIDO CAFE, a Copartnership, etc., et al., Appellants.

Hugh B. Rotchford, Donald E. Ruppe and Robert E. Ford for Appellants.

Borton & Petrini, Athearn, Chandler & Farmer and Leigh Athearn for Respondent.

BARNARD, P. J.—This is an action for damages for the death of Harvey J. Stewart. A motion for a nonsuit having been denied the defendants rested without introducing evidence and moved for a directed verdict, which motion was denied as was also a motion for judgment notwithstanding the verdict. From a judgment in favor of the plaintiff the defendants have appealed.

The appellants were operating a restaurant and bar in Bakersfield known as Lido Cafe, and the injuries which resulted in the death of Stewart were caused by his falling down a stairway on those premises on October 19, 1933. The Lido Cafe faces south and is divided by a partition running north and south. The western portion is occupied by the restaurant from which swinging doors give access to the bar, which occupies the front end of the eastern portion.

An understanding of the points raised requires a description of this eastern portion. This portion has a front of 19 feet and a depth of about 80 feet and is divided into what may be called three rooms. The front room, used as a bar, is approximately 19 feet by 22½ feet. Its north wall goes to the ceiling and entrance to the middle room is by a door at the west end of this wall and to the left as one faces the rear of the building. The middle room is approximately 19 feet by 44 feet in size. To the rear of this is what may be called another room although the partition between the two is only 6½ feet high while the ceiling is 17 feet high. Entrance to this third room is by a door at the west end of this partition, near the left wall of the room as you face the rear. This third room is 19 feet wide and about 11 feet in depth. In the northwest corner of this room is an offset 3½x4 feet in size, the walls of which go to the ceiling, and in which there is a

toilet the door to which is in the east wall of the offset. As one enters this third room through the door referred to he faces the south wall of this offset, and sees ahead of him a sink along the lower part of the wall and above that, beginning about seven feet from the floor, a grill-work with wire in front of it which is similar in construction to an air conveyor. Along the east wall of the portion of the building we are describing is another offset which is partly in the middle room and partly in the third room. The walls of this offset are 12 feet high and the top is covered. This offset is about 12 feet long and 4½ feet wide. It encloses a stairway to the basement. The entrance to this stairway is by a door in the north end of this offset, near the northeast corner of the third room. On the occasion in question there was no light in this toilet and no light in this third room, although this room received some light over the partition from a light near the center of the middle room. The first person to enter this room after the deceased was injured, testified: "You could see to get around but it was rather faint."

On the evening in question the deceased dined with a party of friends in this restaurant. About 8 o'clock he went through the door into the barroom, where two of his friends were standing at the bar. He asked the bartender, who was an employee of the appellants, the way to the lavatory and received the reply: "Down the end of the hall to the left." He then told his friends he would see them in a minute and started to the rear of the premises through the door in the northwest corner of the barroom. Shortly thereafter the bartender heard a noise and said to Mr. Jones, a friend of the deceased: "I think your friend fell back there." Jones went back and found the deceased injured at the foot of the stairway leading to the basement. Jones testified that when he went back there was no light in the third room or the toilet; that after he entered through the door he proceeded to about the center of the room and at that point looked back over his shoulder and "I could see by the faint glow the bowl of the lavatory;" that he then had his back to the offset which contained the toilet; that he then proceeded to the other or east side of the room where he found the door to the stairway open; that he could see the opening but could see nothing beyond the opening itself; and that he found Stewart at the bottom of this stairway. It is conceded that the door to the

basement was not locked and that there were no signs either of direction or warning in either of these rooms. One of the appellants, when asked if this lavatory was maintained for the use of patrons, replied: ''Not necessarily for patrons, it was more for employees than patrons.'' She then testified that nevertheless it was used by patrons quite often and that her employees often directed patrons back there, and that there was another toilet off the dining room.

The appellants contend that the deceased, in entering this stairway, was a mere licensee and not an invitee. The jury has impliedly found that he was an invitee and the essential question is whether there is any evidence to support such a finding. In *Corbett* v. *Spanos*, 37 Cal. App. 200 [173 Pac. 769], the court said:

''The law of California as to the duties owing by a proprietor of a store to his customers and to the public is settled by the cases of *Schmidt* v. *Bauer*, 80 Cal. 565 [22 Pac. 256, 5 L. R. A. 580]; *Means* v. *Southern California Ry. Co.*, 144 Cal. 473 [77 Pac. 1001, 1 Ann. Cas. 206]; *Herzog* v. *Hemphill*, 7 Cal. App. 116 [93 Pac. 899]. It is well expressed in the following quotation from *Schmidt* v. *Bauer, supra:* 'The keeper of a public place of business is bound to keep his premises and the passageways to and from it in safe condition, and use ordinary care to avoid accidents or injury to those properly entering upon his premises on business. But this rule only applies to such parts of the building as are a part of or used to gain access to, or constitute a passageway to and from, the business portion of the building, and not to such parts of the building as are used for the private purposes of the owner, unless the party injured has been induced by the invitation or allurement of the owner, express or implied, to enter therein.' ''

The invitation of a proprietor extends not only to all parts of the premises which the patron is expressly invited to use but also to such parts as he is impliedly invited to enter. (*Schmidt* v. *Bauer*, 80 Cal. 565 [22 Pac. 256, 5 L. R. A. 580].) The invitation also extends to those portions of the premises where the invitee under the circumstances and conditions of his invitation would naturally be likely to go. (*Bush* v. *Weed Lumber Co.*, 63 Cal. App. 426 [218 Pac. 618].) Such an invitation may be manifested by the arrangement of

the premises as well as the conduct of the proprietor. (*Herzog* v. *Hemphill*, 7 Cal. App. 116 [93 Pac. 899].)

The appellants argue that the rules laid down in *Herzog* v. *Hemphill, supra, Corbett* v. *Spanos, supra, Schmidt* v. *Bauer, supra,* and *Medcraft* v. *Merchants' Exchange*, 211 Cal. 404 [295 Pac. 822], are conclusive here and that it must be held, as a matter of law, that the deceased was not an invitee but was merely a licensee at the time of entering this stairway. The facts in the instant case, however, are somewhat different from those in the cases cited.

In the Herzog case there was no express invitation on the part of the defendant or his employees, and there was no allegation that the portion of the premises in question was designed or maintained for the use of patrons or used as a part of the business. While the court says that the mere permission or habit of an owner of allowing people to enter and use a certain portion of his premises is indicative of a license merely and not of an invitation, it does not follow that such a general habit of permitting it to be used by customers, coupled with a direct invitation by sending a customer there, is not sufficient to constitute the customer an invitee rather than a licensee. In the case before us, there is evidence that this toilet was often used by patrons, that employees often directed customers there, that this fact was well known to the employer and that one of the employees expressly directed the deceased to the same.

In the Schmidt case the defendant pointed the way which was plainly marked, but the customer, disregarding the signs, went out into a back yard and in returning by a different route went aside and entered a private part of a house in the rear of the business premises. In the Corbett case, while it was alleged that the dressing room was placed at the disposal of customers and maintained as an inducement to have them patronize the business, the court pointed out that there was no evidence that it had ever been so used except on this one occasion, that it was not shown that the employee who had directed the lady there was authorized to do so, and that in the absence of such a showing no inference could be drawn of an invitation on the part of the owner.

While the Medcraft case is a little closer, it there appears that the plaintiff was an invitee in the anteroom merely by reason of an implied invitation, that another lighted room in

front of him from which a light appeared over and under an intervening swinging door constituted a further implied invitation, and that the plaintiff deliberately turned aside from this implied invitation and opened another door through which he advanced into darkness. In effect, it was held that the lighted room clearly presented the only invitation that could be implied under the existing circumstances.

We think these cases are not controlling here. Whether or not there is an invitation, and the extent of the invitation, must depend upon the circumstances of each case, and under some circumstances these are close questions. The question of negligence on the part of the injured party is involved and where the circumstances are such that reasonable minds might differ as to whether or not he was negligent in going where he did it cannot be said, as a matter of law, that he was merely a licensee.

The evidence here justifies the inference that the toilet in the rear room was used for the purposes of the business, and an employee of the appellants expressly directed the deceased to it. When he arrived in the third room there was no other lighted room or anything else to give him a further implied invitation to go one way rather than another. The directions given him were ambiguous and it was impossible for him to follow them literally. He was told to go ''down the end of the hall to the left''. Following this direction would take him to the door in the low partition between the second and third rooms, which door was at the left end of that partition. The appellants argue that this direction meant that after he entered the third room he was then to go to the left to the toilet in the northwest corner of that room, but he could not go to his left as he entered the room, for he was then next to the west wall of the building. He could not go straight ahead as there was the sink and the wall resembling an air shaft. In order to reach the toilet it would have been necessary for him, after entering this room, to go to his right for a few feet, to then turn to his left and go a few feet, and then again turn to his left and go straight ahead. He was not given these complete directions and, as he entered the third room, he would naturally see straight ahead of him a very small setoff with a grill-work in the wall facing him which looked similar to an air chute. The light in this room was dim and he would see along the opposite or east wall a

much larger setoff which would appear much more like such a wash room as was to be expected in an establishment of that size. It appears that Mr. Jones did not see the toilet until he was in the middle of this third room and then only because he stopped and looked back over his shoulder. The deceased may not have stopped in that position and very naturally may have failed to look back over his shoulder. When he entered the third room he had to turn to his right and then the larger setoff would be straight ahead of him, although he would still have to go to his left to enter the same. He could well have understood the direction given him as meaning that he should go through the door at his left after he had gone through the longer hall. He entered the rear room which was not properly lighted and not properly signed, after having been given poor and inadequate directions. In attempting to follow these directions he could well have been confused and the mistake he made appears to have been a natural one. It cannot be said, as a matter of law, that the only reasonable course open to him would have led him to the toilet. Under such circumstances the question presented is one of fact and not of law, and the evidence is sufficient to support the implied finding of the jury that the deceased was an invitee up to the moment he was injured.

The second point raised is that the deceased was guilty of contributory negligence as a matter of law. This is based upon the contention that he had departed from the directions given him and was merely a licensee in entering the stairway. This contention has been sufficiently disposed of in what has already been said.

The only other point raised is that the court erred in giving an instruction to the effect that if the jury found that the providing of a lavatory was part of the service furnished by the Lido Cafe in return for the patronage of its paying guests, that Stewart was a paying guest, and that the employee in question, in the course and within the scope of his employment, directed Stewart to the lavatory in the room which contained the door to the basement, that this employee was required to use ordinary care and prudence under the circumstances in giving such directions, and that a failure to exercise such care and prudence in this respect would constitute negligence which could be attributed to the defendants. It is argued that this instruction contains a correct statement

of the law but that there was no evidence to support it.   This argument is based upon the contention that the instruction given to Stewart by this employee was unambiguous, complete and not lacking in any respect.   The back room with its poor visibility, absence of direction or warning signs and with an unlocked door which opened immediately upon a stairway to the basement, presented a dangerous situation.   The employee in question could have directed Stewart to the toilet on the restaurant side of the cafe, which was plainly marked, or he could have given him adequate directions for reaching the one to which he sent him.   As we have pointed out, the directions given were incomplete and ambiguous and could not be literally followed.   The evidence in the record, including the detailed map of the premises in question, furnishes support for the giving of this instruction.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 29, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 25, 1936.