[Civ. No. 2029.   Fourth Appellate District.—September 16, 1937.]

JOHN REICHLE, Respondent, v. ELMER B. HAZIE et al., Defendants; JACK STOREY (a Corporation), Appellant.

Wright, Monroe, Thomas & Glenn and George A. Work for Appellant.

Hervey & Holt for Respondent.

MARKS, J.—This is an appeal from a judgment against Jack Storey, a corporation, to which we will refer as the defendant, in the sum of $8,500 general and $1,033 special. damages, for injuries suffered by plaintiff in an automobile accident on May 30, 1936, at the corner of Second Avenue and Market Street in San Diego.

Market Street and Second Avenue are public streets of the city of San Diego. Market Street runs east and west and Second Avenue intersects it at right angles. Plaintiff, a pedestrian, was crossing from the north to the south side of Market Street in a pedestrian crosswalk on the west side of

Second Avenue. An automobile belonging to defendant and operated by Lee G. Camp, its employee, was being driven north on Second Avenue. Camp made a left turn. into Market Street and ran plaintiff down, injuring him seriously and permanently.

Defendant urges the following grounds for a reversal of the judgment: (1) that plaintiff was guilty of contributory negligence as a matter of law; (2) errors in instructions given; (3) that the general damages are excessive; and (4) that no special damages are recoverable.

■ Plaintiff testified that before entering the intersection he looked for approaching vehicles in both directions on Market Street and back of him (north) on Second. Avenue. He also testified that he looked in all directions for approaching vehicles and did not see defendant's automobile until it hit him.

It is too well settled in California to need extensive citation of supporting authorities that when a pedestrian, before entering a street, looks for approaching vehicles and fails to see one that injures him, the question of his contributory negligence is generally one of fact for the jury; that the finding of that body on this question ordinarily will not be disturbed on appeal. In *White* v. *Davis,* 103 Cal. App. 531 [284 Pac. 1086, 1091], it is said:

''The question as to whether a given state of facts constitutes contributory negligence, as a matter of law, or whether it is a matter that should go to the jury, as a question of fact, is often a close one. The solution depends entirely upon the existing circumstances in each particular case. Unusual circumstances may determine in a given case whether or not reasonable minds might legitimately draw different conclusions on the question of negligence. There seems to be a general rule running through the cases where a pedestrian, or one standing on a highway, is injured by an automobile, which usually determines whether the question of contributory negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching auto-

mobile, or seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury.''

Under the circumstances of the instant case, the jury having absolved plaintiff from contributory negligence, its implied finding on that question cannot be disturbed here.

■ The trial court in its instructions gave the jury a fair summary of sections 510 and 513 and the appropriate provisions of section 511 of the California Vehicle Code, except as to the thirty mile per hour permissive speed at certain intersections. Defendant complains of these instructions upon the ground that there is no evidence (1) that the intersection was obstructed; or (2) that it was within a business district; and (3) that the permissive speed at the intersection was thirty miles per hour under the provisions of the latter part of subsection four of subdivision ''a'' of section 511 of the Vehicle Code.

It is true that there is no oral testimony in the record which would conclusively establish that the intersection was obstructed as that term is defined in the Vehicle Code. However, there are in the record photographs of three corners of the intersection which conclusively establish the fact that it was an obstructed one. These photographs are in evidence and justify the instruction given on that subject.

■ During the trial it was stipulated that the intersection was within a business district. This stipulation is conclusive on that question and obviated the necessity of introducing any evidence as to the character of the district. The effect of the stipulation cannot be questioned on appeal.

There is no evidence that there were boulevard stop signs on any corner of the intersection. None show in the photographs of three of the four corners.

■ Under the plain provisions of subsection four, subdivision ''a'' of section 511 of the Vehicle Code, it having been stipulated that the intersection was within a business district, the permissive or *prima facie* speed limit was not thirty miles an hour. There is nothing in the record that would render proper an instruction on any thirty miles per hour permissive or *prima facie* speed at the intersection.

■ There is no merit in the contention that the general damages awarded plaintiff are excessive. He was seriously and permanently injured. He spent one hundred ten days

in a hospital and will have to return for another operation. He is permanently lamed. The success or failure of the future operation will determine the extent of the use of one of his legs. He has osteomyelitis of one of the bones of his leg and permanent draining is not an improbable result. A reading of the description of plaintiff's injuries set forth in defendant's opening brief is sufficient to convince us that the size of the award of general damages is not such as to indicate corruption, bias, passion or prejudice on the part of the jury.

■ Defendant attacks the award of special damages because plaintiff was cared for in a county hospital and not a private institution. The contention is based upon the following excerpt from the record concerning charges made at the county hospital:

"There are two types of patients on whom a charge is supposed to be made. First, any patient who is admitted fraudulently to the hospital and is able to pay his bill; and, second, in any case where there is recompense for the injury received, he is supposed to pay the same fees as to any private hospital, not only to the doctor but to the hospital."

Defendant does not question the reasonableness of the charges which form the total of the special damages.

Where a patient in a county hospital can pay the charges for his care and treatment it becomes the duty of the county officials to collect such charges from him. (*Goodall* v. *Brite,* 11 Cal. App. (2d) 540 [54 Pac. (2d) 510].) Where, as here, a patient was admitted to a hospital without an express contract to pay for his care and treatment, "The law, . . . in the absence of evidence to show gratuitous service, would imply an agreement . . . to pay the reasonable value" of the services rendered (*Mathes* v. *Aggeler & Musser Seed Co.,* 179 Cal. 697 [178 Pac. 713, 715]), subject to the limitations set forth in *Goodall* v. *Brite, supra,* when the hospital is a county institution. While this question seems to be one of first impression in California, we can see no good reason for denying the recovery of special damages where plaintiff was cared for in a public hospital when such recovery would be sustained had he been cared for and treated in a private hospital. Certainly there is just as sound reason in permitting such recovery where the money will go to a public institution to relieve the burden of public taxes as where it

will go to a private institution to increase the profits of its stockholders.

Judgment affirmed.

Jennings, Acting P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 15, 1937.