[Civ. No. 3342. Fourth Dist. July 10, 1944.]

EDITH GASTINE et al., Respondents, v. JOHN SIDNEY EWING et al., Appellants.

Dempster McKee and Monroe & McInnis for Appellants.

Edgar B. Hervey and Henry F. Walker for Respondents.

GRIFFIN, J.—This is an appeal from a judgment against defendants for damages for personal injuries received by plaintiff wife when she fell into a stage elevator shaft upon the premises of a cafe and night club owned and operated by defendants. Her presence there resulted from an invitation to appear and demonstrate an act looking toward pros-

pective employment by defendants. Trial was had before the court sitting without a jury.

In the center of the building here involved there was a circular elevator stage about 14 feet in diameter which was raised and lowered by electrical machinery. It had a height of 54 inches above the floor. Surrounding it and at the same height, there was a platform in which stage lights of various colors were located. Encircling this platform was a circular bar and surrounding this bar were stools. The stage was not used for public dancing but only by professional entertainers who entered through a door in the basement. When the stage was lowered into the elevator pit it was 14 feet below its extreme height. The elevator pit was circular in form and completely enclosed except for the basement door. The floor of the stage was of hard maple, unpainted, and had two narrow strips of darker wood running across it. The interior of the pit was of rose color. The stage was lowered and raised by means of three buttons on the southerly portion of its floor. By pressing one button it could be raised, and by pressing another button it could be stopped. It could also be raised, but not lowered, by an auxiliary button which was located on the back bar. The cafe was lighted by means of a large ornate chandelier over the approximate center of the stage and by side lights in brackets on the walls surrounding the stage and on the balcony.

The plaintiff Edith Gastine, to whom we will refer as the plaintiff, at the time of the accident was, and for many years had been, a professional dancer and entertainer. For some considerable time she had employed a certain theatrical booking agency, and particularly Evelyn Lening of that agency, to book her professional engagements. Through her agent plaintiff had been notified to be at defendants' cafe on the date of the accident at three o'clock in the afternoon for a rehearsal. The arrangement was that various acts of entertainment were sent down by the agency to rehearse for the approval or disapproval of the defendants. Plaintiff had signed the usual contract in the office of her agent but it had not been signed by the defendants. She was to be engaged only if her act met with their approval.

On the afternoon in question, the cafe was not open for business. When plaintiff arrived in San Diego she entered the cafe through the service entrance on the northeast corner

and came around the end of the bar which was located to the south of the hallway leading from this entrance. This was her first visit to the cafe. She was met by defendants' manager who introduced himself and inquired if she was one of the new acts. She replied that she was. He laid her costumes on a table in the hall and told her she would be given a dressing room after the rehearsal. She then went into the main cafe room to rehearse with the orchestra. She saw her booking agent and defendants sitting at the bar and she spoke to her agent. The agent did not introduce plaintiff to the defendants. At that particular time defendants and the booking agent were watching the rehearsal, on the stage, of another act which had been booked by this agent. The plaintiff, upon her entry, saw this act being rehearsed. Nothing was said to her about the character of the stage or its operation. She proceeded to sort her music after which she noticed that the previous act was not on the stage although the orchestra was still playing.

The only means of entrance to the stage, except for the door in the basement, consisted of four steps which went up to the height of the bar with a ramp five feet long and eighteen inches wide extending across the edge of the platform. One end of this ramp was on the bar and the other on the platform. Plaintiff was desirous of ascertaining whether the stage floor was slippery and if her shoes were appropriate. She took a pair of shoes from the several pairs she had brought with her. She testified that she was unable to see the surface of the stage from the cafe floor; that she observed that no one was on the stage at the time; that it appeared to her that the performer had finished his act and that she took it for granted that he had come down the ramp and steps although she did not see him; that she thought the stage was stationary; that the lighting in the cafe was "dim"; that the footlights threw their lights upward to reflect upon the performer; that she walked up the steps, crossed the back bar on the ramp, to test the floor; that the floor looked like some black composition; that she walked straight forward and stepped into the elevator pit and was seriously injured. The stage had been lowered by the performer who had been rehearsing. These facts are not in dispute. The defendants and their witnesses testified that the main lights and the surrounding bracket lights were fully turned on. The trial court

found that the premises were "poorly lighted." Plaintiff's agent testified that she was aware of and had told plaintiff the nature of the stage.

It is contended by defendants that regardless of whether plaintiff did or did not have actual knowledge, the knowledge which the agent had was imputed to her as a matter of law and that the evidence is without contradiction that the agent had full knowledge of the premises, their condition, and the operation of the elevator stage. The negligence charged, and which was found by the court, was that the defendants negligently caused the stage to be lowered to the basement level; that they negligently maintained the premises in a poorly lighted condition and that they failed to warn plaintiff of the danger.

Under the facts related, defendants argue, (1) that they were not guilty of any negligence; (2) that plaintiff was guilty of contributory negligence as a matter of law; and (3) that the doctor bill of one Dr. West was improperly allowed as an item of damage.

Since the briefs were filed in the present action on appeal, defendants duly moved this court for permission "to produce additional evidence" relative to the present physical condition of plaintiff, which evidence they. claim relates to her ability to carry on her business as a professional dancer. We will therefore first dispose of this motion before proceeding with the merits of the appeal.

The affidavit of defendant Agnes Mae Ewing recites generally that the cause was tried in March, 1943; that at the trial opinion evidence was introduced to the effect that in all probability the plaintiff would be unable to thereafter engage in her business and profession as a professional theatrical dancer; that she later heard, since the rendition of the judgment, that plaintiff was again dancing professionally. A further supporting affidavit was filed by one Joseph Faber, reciting that he is the manager of the Biltmore Bowl in Los Angeles; that plaintiff, under her professional name, Edith Davis, was "employed and presented her dancing act at said Biltmore Bowl from July 1, 1943, until August 4, 1943"; that she presented a "finished, competent and pleasing performance"; that "she made her regular appearances daily on the program; that the act given by her was in all respects a high-class theatrical performance and that there was nothing

whatever about her performance to indicate disability or any interference with her dancing performance." The affidavit, as originally prepared, contained a further clause, i. e., "Affiant states that several years previous the said Edith Davis had performed at the Biltmore Bowl, that he was familiar with the performance that she then presented and that her performance in 1943 was fully the equal of her prior performance." This latter portion was apparently stricken by the affiant before the affidavit was verified.

In reply to defendants' affidavits plaintiff recites in her affidavit that prior to February 18, 1942, the date of her injury, she was a professional dancer and was able to and did accept engagements and give dancing performances in the better class theaters and places of entertainment; that she was able to give, and on occasion had given as high as nine performances in one day; that she was able to and did accept and perform engagements extending over periods of a week, a month, or more, and which called for the giving of at least two or three performances per day; that among the routines performed by her were many strenuous and intricate dances involving acrobatics; that since February 18, 1942, affiant has been and still is unable to engage in professional dancing in the manner and to the extent which she theretofore had engaged; that the vast majority of places of entertainment presenting professional dancers, including the Biltmore Bowl, present two or more performances a day; that very few places of entertainment present but one performance a day; that the compensation paid to entertainers for, and in places giving, more than one performance per day is proportionately greater than the compensation paid to entertainers for, and in places giving, but one performance per day; that the demand for entertainers giving but one dancing performance per day is less than the demand for entertainers giving two or more performances per day; that since the conclusion of the trial, affiant has been and remains unable to give more than one performance in any one day; that on one occasion affiant accepted and presented a dancing act at the Biltmore Rendezvous (not the Biltmore Bowl) ; that she was engaged by Mr. Joseph Faber and that the engagement was for a period of four weeks; that it called for, and affiant presented, but one performance per day; that at the conclusion of said engagement and by reason of her physical condition, affiant

was forced to rest and to desist from giving any dancing performances for a period thereafter; that the engagement at the Biltmore Rendezvous was the only engagement accepted by her under which she has given any performances extending over a period of time since the conclusion of the trial; that she has only accepted "casual" engagements; that she has been and remains unable to perform many of the dancing routines theretofore performed by her; that she is unable to perform acrobatics and has been forced to omit them from her routines; that she is now able to do only more simple and less strenuous types of dancing; and that the performance of these simpler and less strenuous types of dancing results in acute discomfort and pain to her back but that they are gradually decreasing in acuteness and severity; that affiant's total compensation for engagements which she is now able to accept is much less than the total compensation she could obtain were she able to present more than one performance a day, and that defendants' allegation that she "has largely, if not entirely recovered from the effects of the injuries received by her" is untrue.

It is upon this showing that defendants seek permission of this court to take additional testimony under section 956a of the Code of Civil Procedure.

We will first analyze the written findings of the trial court bearing upon this subject. It found special pecuniary damages by way of doctor bills, medical supplies, hospital cáre, etc., in the sum of $1,453.14. In another item it found that by reason of defendants' negligence plaintiff suffered a fracture of the right wrist, severely injured and fractured the sacrum; that there was a compression fracture of the second dorsal vertebrae, and injuries to her ribs; that her injuries were of such a character as to be and remain *"perment"*; and that said injuries "will permanently disable said plaintiff and permanently cause her pain, suffering and disability"; that thereby plaintiff has been damaged in the additional sum of $10,000, exclusive of pecuniary damages, therefrom. It then found, as another item of damage, that for a long time and immediately prior to the receipt of said injuries, said plaintiff was regularly employed as a dancer and entertainer and in receipt of $50 per week for her services as such; that by reason of said injuries suffered, plaintiff "has and will be forever unable to resume the said occupation and

will by reason of said injuries be depreciated in her future earning capacity," to plaintiff's additional damage, of a pecuniary nature, in the sum of $5,000.

█ In this application defendants do not question or offer evidence contesting the allowance of $1,453.14 for medical expenses, etc. Their argument is, as we construe it, that the court found plaintiff was permanently and physically disabled from further participating in such work at all and from carrying on her business and profession in any manner. We do not so construe the finding. Ten thousand dollars was allowed for her "pain, suffering, and disability" there set forth, which the court found would permanently disable her. The damage for this pain and suffering was in addition to and exclusive of any pecuniary damage by virtue of her loss of earning power. As a part of the additional pecuniary damage suffered, the court found that she had been "*regularly* employed as a dancer and entertainer," making $50 per week, but that since the receipt of her injuries she "has been and will be forever unable to resume the *said* occupation and will, by reason of said injuries be *depreciated* in her future earning capacity." For her depreciated future earnings it allowed $5,000.

From this recitation it seems clear that the trial court realized that plaintiff might be able to pursue, to a limited extent, her usual vocation, but made allowance for the fact that she might not thereby be able to resume *regular* employment in the manner she had previously enjoyed. A fair interpretation of the allegations of the several affidavits is not opposed to this construction. █ At least it cannot be said, under the facts related, that if the additional evidence recited in the affidavit were introduced, it would result in a reversal of the judgment rendered. Under the construction given section 956a of the Code of Civil Procedure in recent cases and the limitation of the power of appellate courts to hear and determine such issues, we do not feel justified in granting the relief sought. The motion is therefore denied. (*Tupman* v. *Haberkern,* 208 Cal. 256 [280 P. 970] ; *Clough* v. *Allen,* 115 Cal.App. 330 [1 P.2d 545] ; *Monson* v. *Fischer,* 107 Cal.App. 55 [289 P. 899] ; *First National Bank* v. *Terry,* 103 Cal.App. 501 [285 P. 336] ; *Murphy* v. *Sheftel,* 119 Cal.App. 467 [6 P.2d 549] ; *Estrin* v. *Fromsky,* 53 Cal.App.2d 253 [127 P.2d 603] ; *Harbour* v. *Harbour,* 48 Cal.App.2d 97 [119 P.2d 394] ; *Replogle* v. *Ray,* 48 Cal.App.2d 291, 310 [119 P.2d 980] ;

*Bertrand* v. *Pacific Elec. Ry. Co.*, 46 Cal.App.2d 7 [115 P.2d 228] ; *Isenberg* v. *Sherman*, 212 Cal. 454 [298 P. 1004, 299 P. 528] ; *Davis* v. *Chipman*, 210 Cal. 609 [293 P. 40] ; *Kleinsasser* v. *McNamara*, 127 Cal.App. 258 [15 P.2d 788].)

■ We will next consider the merits of defendants' appeal. In point one it is contended that plaintiff was never an invitee on the premises but at most a mere licensee and that she was a trespasser immediately prior to the accident when she went upon the steps and ramp without the knowledge of the defendants. The evidence conclusively shows that defendants desired to secure and employ new acts for presentation to their patrons. Defendants, acting through a booking agency, invited plaintiff to appear and demonstrate her act on the date in question. Defendants, their agents and employees were present. Upon entering the premises plaintiff was greeted by defendants' manager who learned that she had come to demonstrate an act. Her presence was therefore known to defendants. She was there to transact business of common interest and mutual advantage to them and to herself. She was a business invitee and defendants owed her all duties attendant thereon. (*Koppelman* v. *Ambassador Hotel Co.*, 35 Cal.App.2d 537 [96 P.2d 196] ; *Stewart* v. *Lido Cafe*, 13 Cal.App.2d 46 [56 P.2d 553] ; *Bush* v. *Weed Lumber Co.*, 63 Cal.App. 426 [218 P. 618]. It has been held that one who enters the premises of another upon the latter's invitation, express or implied, for the purpose of applying for work, is an invitee. (*Steiskal* v. *Marshall Field & Co.*, 238 Ill. 92 [87 N.E. 117] ; *McDonough* v. *James Reilly etc. Co.*, 45 Misc. 334 [90 N.Y.S. 358] ; *Warner* v. *Mier Carriage & Buggy Co.*, 26 Ind.App. 350 [58 N.E. 554, 59 N.E. 873] ; *Shelby's Admr.* v. *Cincinnati etc. Ry. Co.*, 85 Ky. 224 [3 S.W. 157] ; *Brigman* v. *Fiske-Carter Const. Co.*, 192 N.C. 791 [136 S.E. 125, 49 A.L.R. 773] ; *Crane* v. *Smith*, 23 Cal.2d 288 [144 P.2d 356].) Defendants' argument that plaintiff was a trespasser as to that portion of the premises upon which she received her injuries is without merit. ■ It is true, as contended by them, that one may be an invitee to a certain portion of the premises and a licensee or trespasser as to other portions. The evidence fully supports the conclusion that plaintiff was an invitee at the time of her injury. ■ The question as

to whether the invitation, express or implied, included that part of the premises where the injury occurred is generally not one of law. On the contrary, it is usually a question of fact for the determination of the court or jury. (*Dobbie* v. *Pacific Gas & Elec. Co.,* 95 Cal.App. 781, 787 [273 P. 630]; *State Compensation Ins. Fund* v. *Allen,* 104 Cal.App. 400, 407 [285 P. 1053]; *Bush* v. *Weed Lumber Co., supra.*) The invitation of a proprietor extends not only to all parts of the premises which the patron expressly is invited to use, but also to such parts as he or she is impliedly invited to enter, and the invitation also extends to those portions of the premises where the invitee, under circumstances and conditions of his invitation, would naturally be likely to go. (*Stewart* v. *Lido Cafe, supra.*) In this case, the plaintiff was expected to be ready for her performance when the previous act was terminated. She was sorting her music for the orchestra so as to be ready for her performance. It was essential that she wear the type of dancing shoes best fitted to the nature of the stage upon which she was to perform. It was likewise essential that she test this surface for such purpose. Having completed the task of arranging her music, she glanced up and noticed that no performer was occupying the stage. It appeared to be an appropriate opportunity for her to test the stage surface. Defendants' orchestra leader testified that he had observed other dancers testing the stage surface preparatory to demonstrating their acts. In so entering upon the steps and over the ramp to test the stage, she was not engaged in an unexpected or unreasonable activity. Under the facts presented the question of the status of plaintiff was one of fact upon which the determination of the trial court is conclusive. (*Dobbie* v. *Pacific Gas & Elec. Co., supra.*)

 In support of the court's findings as to the lighting conditions, the evidence shows that the trial judge visited the premises during the course of the trial and viewed the scene of the accident. He observed the method of operation of the inner stage and the various lighting conditions as explained by the witnesses. This, in itself, was evidence in the case. (*Ethel D. Co.* v. *Industrial Acc. Com.,* 219 Cal. 699, 704 [28 P.2d 919]; *Rickards* v. *Noonan,* 40 Cal.App.2d 266, 274 [104 P.2d 839]; *McManus* v. *Otis,* 61 Cal.App.2d 432 [143 P.2d 380].)

Plaintiff testified that the premises were poorly and dimly lighted and that the center chandelier was not turned on; that as she moved near the end of the ramp she looked upon what appeared to her to be, and which she, due to the faulty lighting conditions, mistook to be a dark colored stage surface. It has been held that under certain circumstances failure to have proper or sufficient lighting conditions alone is sufficient to support a finding of negligence. (*DeGraf* v. *Anglo Cal. Nat. Bank,* 14 Cal.2d 87 [92 P.2d 899] ; *Sheyer* v. *Lowell,* 134 Cal. 357 [66 P. 307] ; *Moore* v. *Marshall,* 41 Cal.App.2d 490 [107 P.2d 89] ; *Herold* v. *P. H. Matthews Paint House,* 39 Cal.App. 489 [179 P. 414].)

 As to the lowering of the inner stage and failure to employ proper precautions and warnings, it is true that the evidence does not definitely show by whom the stage was lowered. Apparently, it was lowered by the performers immediately preceding the accident, who had had the operation of the stage explained to them. This was done under defendants' instructions through their manager. Defendants had the right to control the operation of the stage and to see that it was at the proper level so that it would not create an open, unguarded shaft when plaintiff was to be rightfully using it in a manner to be anticipated by defendants. This fact, when considered in conjunction with the fact that there was no guard, chain or other obstacle of any kind placed across the steps or ramp leading to the stage, the poor lighting condition found by the court to exist, and the failure of defendants to warn plaintiff of such condition, which condition was known by them to exist, would, if true, support a finding of negligence on the part of defendants. (*Goldberger* v. *Market Street Ry. Co.,* 130 Cal.App. 597, 603 [20 P.2d 351] ; *Dobbie.* v. *Pacific Gas & Elec. Co., supra; Blaylock* v. *Jensen,* 44 Cal.App.2d 850, 852 [113 P.2d 256].)

 The evidence was conflicting as to whether or not plaintiff had personal knowledge of the dangerous condition. She understood and believed the platform to be stationary. It is defendants' theory that since Miss Lening was plaintiff's agent, to a certain extent, and knew it was an elevator stage, her knowledge was imputed to the plaintiff. Miss Lening's uncommunicated knowledge of the nature of the elevator stage, under the facts here presented, cannot affect plaintiff's right of recovery. (*Dobbie* v. *Pacific Gas & Elec.*

*Co., supra.*) Whether plaintiff acted as a reasonable and prudent person under the circumstances was for the trial court to determine. The entire question of plaintiff's contributory negligence was one of fact and not of law. (*Colombo* v. *Axelrad*, 45 Cal.App.2d 439 [114 P.2d 425].)

The last question considered is novel, and no authority is cited which is directly in point. The evidence discloses that defendant Mrs. Ewing tried to call a certain doctor to attend plaintiff, but being unable to reach him, called a Dr. Denny. He in turn called upon a Dr. West, orthopedic surgeon, for consultation and aid in treating plaintiff. Defendants do not question but that the treatment and care rendered by these doctors were necessitated by plaintiff's injuries and that their respective charges constituted the reasonable value of their services. The amount of Dr. West's charge was $500. His certificate to practice medicine was issued on August 23, 1933. He came to San Diego County to practice medicine in 1941 but his certificate was not registered in the county clerk's office of this county until February 9, 1943, which registration was about one year after the rendition of the doctor's services. It is contended that plaintiff cannot recover for the reasonable value of the services performed by Dr. West because he had not complied with section 2340 of the Business and Professions Code. Citing 48 C.J. 1159 and 7 C.J.S. 1022.

As to the claim here involved, Dr. West, an admitted specialist in the field of orthopedic surgery, testified that the amount of his charges ($500) made to plaintiff for services performed was reasonable and fair.

The record is silent as to whether plaintiff paid that bill prior to the trial of the action.

The form of the question presented, as set forth in defendants' opening brief, clearly indicates that plaintiff had paid it. The question reads: "Is an injured person entitled to recover *money paid* for professional services to an unlicensed doctor?" In answering this question we will assume that the bill was paid.

In 128 A.L.R. 686, the right of an injured party to recover the value of services gratuitously rendered is discussed. It was there said that "In a majority of the cases the position is taken that the services were rendered for the benefit of the injured plaintiff, that the defendant, the wrongdoer,

should not be permitted to profit by any gratuity extended to his victim, and that consequently the reasonable value of such services may be recovered.''

In the annotations found in 18 A.L.R. 678, and 95 A.L.R. 575, the rule governing the right of an injured plaintiff to recover damages, although plaintiff had received compensation from some other source, is discussed. See, also, *Brosnan* v. *Sweetser*, 127 Ind. 1 [26 N.E. 555], and *Wells* v. *Minneapolis Baseball etc. Assn.*, 122 Minn. 327 [142 N.W. 706, Ann. Cas. 1914D 922, 46 L.R.A.N.S. 606].

Bearing upon the majority view of the question, see *Purcell* v. *Goldberg*, 34 Cal.App.2d 344, 350 [93 P.2d 578]; *Reichle* v. *Hazie,* 22 Cal.App.2d 543, 547 [71 P.2d 849]; *Loggie* v. *Interstate Transit Co.*, 108 Cal.App. 165, 169 [291 P. 618].

In the present action, in answer to the propounded question, we adopt the reasoning and holding expressed in *Miller* v. *City of Eldon*, 185 Iowa 307 [170 N.W. 377], which was an action against a city for personal injuries where plaintiff had employed a chiropractor and *paid her* for services rendered in good faith. It was found that the chiropractor was not authorized to practice medicine within the state. The court there concluded, as we must here, that plaintiff, notwithstanding, was entitled to recover the reasonable value of such services. Many cases are cited in support of that conclusion. The award here made properly included the reasonable value of the services performed by the doctor, which amount we assume was paid by or on behalf of the plaintiff. This disposes of the questions here presented.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied August 8, 1944, and appellants' petition for a hearing by the Supreme Court was denied September 1, 1944.